AUSTIN ROCKWELL ET AL. V. BLAIR SAVINGS BANK ET AL.

[FILED JANUARY 2, 1891.]

**Mortgages:** PURCHASER ASSUMING, MAY BE SUED ON: DEFICIENCY. The purchaser of mortgaged premises, who, as the whole or part consideration for such purchase, agrees to pay off the mortgage, may be sued upon default of such payment by the holder of such mortgage; or, if he be made a party to a suit to foreclose such mortgage, a judgment may be rendered against him for any deficiency which may remain after applying the proceeds of sale of the mortgaged premises to the extinguishment of the mortgaged debt. (*Cooper v. Foss,* 15 Neb., 515.)

ERROR to the district court for Washington county. Tried below before GROFF, J.

*Jesse T. Davis,* for plaintiffs in error.

*L. W. Osborn*, for defendant in error, Blair Savings Bank, cited: *Cooper v. Foss*, 15 Neb., 515; 1 Jones, Mortgages [2d Ed.], secs. 740–1, and citations.

*W. H. Farnsworth*, for defendant in error, Tebury.

NORVAL, J.

On the 10th day of February, 1886, Austin Rockwell, Carolina M. Rockwell, and Wm. F. Rockwell, executed and delivered to the Blair Savings Bank their promissory note for $2,200, drawing ten per cent interest, payable quarterly, and due in two years from its date. On the same day the Rockwells, to secure the payment of the said note, made their mortgage deed to the Blair Savings Bank on lot 21, in block 37, in the city of Blair, Nebraska.

On the 24th day of March, 1887, the Rockwells sold and conveyed the lot to Isaac Tebury, who immediately went into possession, and subsequently made three interest payments on the mortgage.

On the 24th day of February, 1888, the Blair Savings Bank commenced an action for the foreclosure of said mortgage, in which action the said Rockwells and Isaac Tebury were made defendants. A summons was personally served upon all of the defendants. The defendant Tebury failing to plead or answer, a default was entered against him. The Rockwells answered admitting the execution and delivery of the note and mortgage, and alleged in substance that on the 24th day of March, 1887, they sold and conveyed the lot to Tebury, who, as a part of the purchase price, assumed and agreed to pay the said note and mortgage; that Tebury entered into possession of the lot, and has ever since occupied the same; that in accordance with his agreement he has paid three installments of interest on said note, as the same fell due, amounting to $165, and that he is liable for any deficiency after the sale of the mortgaged premises.

9

On the 3d day of April, 1888, a decree of foreclosure was rendered for the sum of $2,181.67, and on the 10th day of the same month the defendant Isaac Tebury filed with the clerk of the district court a written request for a stay of proceedings. After the expiration of the stay an order of sale was issued, the property was sold, and the sale was confirmed. There remained a deficiency of $740.15 due the plaintiff in the action. The plaintiff filed a motion for a deficiency judgment for said sum against the Rockwells and Isaac Tebury. The court, after hearing the testimony as to the liability of Tebury for said deficiency, rendered a deficiency judgment against the Rockwells for $740.15, and entered a dismissal as to Tebury, to which the plaintiff bank and defendants Rockwell excepted. The Rockwells prosecuted a petition in error, and the Blair Savings Bank joins them in asking that Tebury be held liable with the plaintiffs in error for the amount of said deficiency.

That the Rockwells are liable for the entire mortgage debt and were not released therefrom by any agreement they may have made with Tebury is not disputed. The only controversy is whether Tebury is liable with the Rockwells for the payment of the deficiency. The property was conveyed by a deed of general warranty which makes no mention of any incumbrance. Austin Rockwell and Isaac Tebury were the only persons who gave testimony as to the terms of the agreement for the sale of the lot. The testimony of these witnesses agrees that the purchase price was $2,500; that Tebury only paid the Rockwells $300; that he never agreed to pay the balance of the considerations to them, and gave no obligation for the remainder of the contract price. Tebury knew of the existence of the mortgage for $2,200 held by the bank when the sale was made, and after obtaining the deed he paid three installments of interest on the lien. Austin Rockwell also testified that Tebury agreed to pay the amount

due the bank on the mortgage. This testimony is not overcome by the evidence of Tebury. While he swears on his direct examination that nothing was said about his paying the mortgage, yet on cross-examination he says he has no recollection of anything being said about his taking care of the mortgage debt. He was also asked on cross-examination 'How did you pay the other $2,200?" His answer was: "A mortgage holds it." He makes no claim in his testimony that he only bought the Rockwells' equity of redemption, but admits that he was to pay $2,500 for the property; that he only paid $300 of the same, and that the mortgage holds the balance. The testimony establishes beyond any question that Tebury retained part of the purchase price to pay the $2,200 incumbrance. He thereby made the mortgage debt his own and is therefore personally liable with the Rockwells for the amount of the deficiency remaining after the foreclosure of the mortgaged premises. In *Cooper v. Foss*, 15 Neb., 515, the same doctrine was held and applied by Chief Justice COBB.

The judgment of the district court is

REVERSED AND REMANDED.

THE other judges concur.