CATHARINE WORTHINGTON, ADMINISTRATRIX, APPELLANT, V. CHARLES E. WORTHINGTON ET AL., APPELLEES.

[FILED JUNE 30, 1891.]

1. **Review:** THE FINDING OF THE DISTRICT COURT on conflicting evidence is conclusive on appeal to the supreme court, unless there is a clear preponderance of evidence against the finding.

2. **Real Estate:** ORAL CONTRACT TO CONVEY: SPECIFIC PERFORMANCE of an oral contract to convey real estate, will not be enforced if the contract is not clearly proved both as to the fact of making it and as to its terms.

APPEAL from the district court for Lancaster county. Heard below before CHAPMAN, J.

*B. F. Johnson,* and *Pound & Burr,* for appellant, cited: *Shuman v. Willets,* 17 Neb., 478; *Haines v. Spanogle,* Id., 637; *Hanlon v. Wilson,* 10 Id., 138; *Fisher v. Moolick,* 13 Wis., 358; *Sch. Dist. v. Macloon,* 4 Id., 79; *Bomier v. Caldwell,* 8 Mich., 463; *McHugh v. Smiley,* 17 Neb., 620; *Uhl v. May,* 5 Id., 157; *Filley v. Hopkins,* 1 Id., 134; *Parks v. Jackson,* 11 Wend. [N. Y.], 464; *McKinzie v. Perrill,* 15 O. St., 168.

*Stearns & Strode, contra,* cited cases referred to in opinion.

NORVAL, J.

This is an action for specific performance of an alleged contract to convey real estate, by Thomas Worthington against Charles E. Worthington, James Spencer, and Thomas Woods. From a decree for defendants, plaintiff appeals.

On the 31st day of May, 1886, the defendant Spencer entered into a written contract with Charles E. Worthington, a son of the plaintiff, for the purchase and sale of lot 7, in block 1, in Spencer's addition to the city of Lincoln. The consideration agreed upon, and expressed in the contract, was $1,200, of which $200 was paid by Charles E. Worthington in cash at the time. He also assumed the payment of a mortgage of $200 against the premises, and gave Spencer his thirty-two promissory notes of $25 each, payable one on the first day of each month, with interest at ten per cent from date. Spencer agreed to convey by deed of general warranty, upon the payments being made.

The plaintiff contends that about the first day of June, 1886, he purchased the property of his son, Charles E.

Worthington, under a verbal agreement for a warranty deed; that by the terms of the agreement plaintiff assumed all future payments named in the written contract between his son and Spencer; that by virtue of the agreement he took immediate possession of the premises, made improvements thereon, and that he has paid $60 of the purchase price, and tendered payment of the balance.

The defendants deny that the plaintiff ever made a contract of any kind with Charles E. Worthington for the purchase of the property, or that he took possession under any contract of purchase, but allege he went into possession as a tenant of the son, and that the $60 was paid solely as rent.

It appears that about the first day of September, 1886, Charles E. Worthington surrendered to Spencer his contract for a deed, and the money advanced by Charles was refunded to him. On September 2, 1886, Spencer sold and conveyed the lot to the defendant Thomas Woods for $1,250, which, after deducting the commissions paid to the real estate agent who negotiated the sale, made the actual consideration received by Spencer the same as the contract price on the former sale.

The principal issue of fact presented to the trial court for determination was, whether a contract ever existed between the plaintiff and his son for the purchase of the lot.

Thomas Worthington, the plaintiff, testified that at the time Charles E. Worthington, his son, contracted with Spencer for the property, plaintiff was engaged in the butcher business in Lincoln, at the corner of Sixteenth and O streets. When his son came to him and asked him to buy the property in litigation to save paying rent, at the same time telling him that he, Charles, would pay $200 or $300 thereon, and that plaintiff could pay the balance, that plaintiff then went with his son and looked over the property, and talked with Spencer, who urged the son to buy the property for his father. That an agreement be-

tween the father and son, relative to the purchase of the lot was then made in Spencer's presence, whereby the contract was drawn in the name of the son, who paid the $200 to Spencer, and plaintiff was to pay the balance of the consideration as it fell due.

The plaintiff further testified that his son agreed to let the $200 paid by him to Spencer go to plaintiff's benefit, in consideration of his having taken care of his son's child for several years. That plaintiff moved onto the property shortly after June 1, repaired the house, which had formerly been used as a blacksmith shop, built an addition to it, and put in an ice box for his meat market; that when the first note fell due, Spencer brought him a receipt calling for $30 for rent, and that plaintiff refused to pay the same, saying "I don't pay no such note as that there—no such bill, no such receipt; I don't pay at all, I moved away from Riordan block to save paying rent," and that Spencer then scratched off the words "for rent"; that the following month a second receipt was brought by Spencer for $30 "for rent," and plaintiff again refused to pay the same on the ground that he was paying for the property and not paying rent, and Spencer again scratched out the words "for rent," and thereupon plaintiff paid the money.

The plaintiff also testified that he tendered to Spencer the payments as they fell due, who refused to accept the money.

The plaintiff is corroborated by the testimony of W. H. Graham, plaintiff's wife Catharine, and his sons William and Samuel.

Charles Worthington testified that his father was not present when the contract between himself and Spencer was made; that he never had any conversation with his father about the purchase of the property before he purchased it; that he never agreed to transfer to the plaintiff the contract he had made with Spencer, and he never had any conversation with his father upon the subject; that he

24

did not buy the property for the plaintiff; that there was no agreement whereby he was to turn the $200 paid to Spencer to the benefit of the plaintiff, and there was no conversation of the kind between them; that there was no contract or agreement under which the plaintiff took possession of the premises except that he told the plaintiff he could move into the house, and after plaintiff had moved in he gave Spencer orders to collect $30 per month for rent, which Spencer collected, and that all the money paid by plaintiff to Spencer was for rent; that the lumber used in repairing the house was charged to him, and was afterwards paid for by Spencer; that witness paid $25 for the plastering of the building. He further testified that he told Spencer in August, 1886, that he could not make the payments, and was going to let the property go back, and that Spencer took the property back and paid him all that he had advanced on it. He also testified that in the same month that he heard his father say to Spencer that he was going to return to Iowa, and would not pay any more rent.

The testimony of James E. Spencer corroborates most of the evidence given by Charles E. Worthington.

The testimony of W. A. Harris, the real estate agent who sold the property for Spencer to Woods, is to the effect that prior to the sale to Woods, he drove Woods and his wife to the premises, where they saw the plaintiff and he told him he was trying to sell the property, and plaintiff replied, "That is all right," and spoke about Spencer and his son understanding the matter. Plaintiff raised no objection to witness making the sale.

The trial court found the disputed question of fact against the plaintiff. It is impossible to reconcile the testimony, and it is quite · evenly balanced. By seeing the witnesses and hearing them testify, the court below is better able than we, to judge which witnesses were entitled to credit, and who should be disbelieved. It is well settled in this state that the finding of a district court on conflict-

ing evidence is conclusive on appeal to the supreme court, unless there is a clear preponderance of evidence against the finding. (*Brown v. Hurst,* 3 Neb., 353 ; *Helling v. Mortgage Security Co.,* 10 Id., 611 ; *Courtnay v. Price,* 12 Id., 188; *Jennings v. Simpson,* Id., 558; *Aultman v. Patterson,* 14 Id., 58; *McLaughlin v. Sanders,* 17 Id., 110.)

Again, the specific performance of an oral contract to convey real estate, will not be enforced if the contract is not clearly proven, both as to the fact of making it and as to its terms. (*Waters v. Howard,* 1 Md. Chan., 116; Story's Eq. Jr., sec. 769; *Poland v. O'Connor,* 1 Neb., 50; *Williams v. Lowe,* 4 Id., 382 ; *Morgan v. Hardy,* 16 Id., 438 ; *McPherson v. Williams,* Id., 625; *Carr v. Dural,* 39 U. S., 83; *Gallagher v. Gallagher,* 5 S. E. Rep. [W. Va.], 297.)

The evidence was so conflicting, that the trial court was unable to find that the alleged contract sought to be enforced, ever existed, and we cannot say that the court erred.

JUDGMENT AFFIRMED.

THE other judges concur.