LOUIS P. REYNOLDS, APPELLEE, v. GOULD P. DIETZ ET AL., IMPLEADED WITH HARRISON BOSTWICK, APPELLANT.

FILED FEBRUARY 6, 1894.          No. 3968.

1. **Mortgages:** PURCHASE OF PREMISES BY TRUSTEE: DEFICIENCY JUDGMENT. Where several parties purchased real property, the title being taken in the name of one of them as trustee for all the purchasers, and the deed of conveyance to

him recited, as part of the consideration for the conveyance, that the grantee named as trustee agreed and assumed to pay a mortgage in existence upon the premises conveyed, *held*, that upon an averment of the above facts in the petition there should not be inferred of necessity the conclusion that the *cestuis que trust*, for whom the trustee was acting, were individually liable for a deficiency which might remain unsatisfied upon the foreclosure sale of the mortgaged premises.    Following *Reeves v. Wilcox*, 35 Neb., 779.

2. **An agreement to pay an existing mortgage**, as part of the consideration for a conveyance of mortgaged premises, need not be inserted in the deed, neither must it necessarily be in writing. Such an agreement is an independent undertaking of the party making it, the conveyance affording sufficient consideration to sustain it when its existence is established by a preponderance of evidence.   Following *Rockwell v. Blair Savings Bank*, 31 Neb.,128.

3. **Cestuis Que Trust**: FINDING UPON CONFLICTING EVIDENCE: REVIEW.   In the trial court there was evidence that the agreement of the trustee, in whom was vested the title, that he would assume and pay an existing mortgage, was made upon the authority of and to bind the *cestuis que trust*, contradicted by other evidence upon that proposition.   *Held*, That the finding of the trial court in favor of said *cestuis que trust* should not be disturbed.

4. **Bill of Exceptions**: SETTLEMENT BY CLERK.   A clerk can settle a bill of exceptions upon agreement of parties only when the unanimous consent of all the parties interested is shown by a stipulation to that effect attached to the proposed bill of exceptions, signed either by the parties themselves or their attorney of record in the case wherein the bill is proposed, or by an attorney or agent whose special authority to sign is affirmatively shown.

5. **A bill of exceptions to be settled by the clerk** upon agreement of parties, must be acted upon by such clerk within the time fixed by statute, or within the time allowed by the court or judge for the settlement of such bill of exceptions.

REHEARING of case reported in 34 Neb., 265.

*M. A. Hartigan*, for appellant.

*J. B. Cessna, W. P. McCreary, Capps, McCreary & Stevens*, and *Talbot & Bryan*, for appellees.

RYAN, C.

There was filed in this case an opinion which was reported in 34 Neb., 265, *et seq.* Subsequently a rehearing was granted, and the case fully reargued and again submitted for the determination of this court. The history of the transactions out of which it arose is correctly given in the already rep)rted opinion, and need not now be reiterated. Upon a careful examination of the evidence in connection with the pleadings, we are satisfied that some very material, and, indeed, essential, facts have been overlooked. Of this nature is this statement in the opinion referred to: "In the case at bar the proof clearly shows that the *cestuis que trust* named each purchaser and paid for one-tenth portion of the land and agreed to pay the mortgage as a part of the consideration." As to the agreement of the *cestuis que trust* to pay the mortgage as a part of the consideration, the only affirmative evidence was given by H. Bostwick. He said that the receipts given by him to the *cestuis que trust* were uniform each with the other; that the aggregate amount of the receipts was paid as part of the consideration for the deed to himself as trustee; that the property was bought subject to a mortgage of $8,600, and that each party then agreed to assume his part of the existing mortgage; that the property was put in at $20,000, subject to a mortgage of $8,600 and interest, each party paying his share of the balance in cash. On his cross-examination Mr. Bostwick testified as follows:

Q. These receipts were all the written articles you had between these other parties?

A. No, sir; I had a written agreement, and it ought to be in existence to-day, signed by all of them, stating the description of the property, amount of purchase money and the mortgage, and corroborating me as trustee; and everything in it the same as in the receipts, only more fully set out. It was signed by every one here and by Mr. Halter

for the Lincoln parties.   I have looked for it but cannot find it.   I have looked everywhere it is possible for it to be.   It is possible that a contract of that kind was drawn and signed at the time the bill was made.

Q. The receipts therein date from the 10th to the 16th?

A. Yes, sir.

Q. And the deed was recorded on the 20th.   Now where was the money paid?

A. Well, it was paid right here, but some of the Lincoln parties held some papers.   All payments were made right here and the whole deal was fixed up here.   I had never met the Lincoln parties; I think I met Mr. Hyde, and I did it all through Mr. Halter for them.   He gave a check for the money for them.   I think he gave a check for four of them at the same time.

Q. These receipts stated all agreements as far as it stated anything at the time?

A. Yes, sir.

Q. You are the one that was arranging in getting up the syndicate, were you?

A. Yes, sir.

Q. In this agreement they all agreed to assume their proportionate share of the mortgage?

A. Yes, sir.

Q. The mortgage was part of the purchase money to be paid subsequently?

A. Yes, sir.

Q. If the land was not sold?

A. Yes, sir.

Q. Will you swear that you went into all these details?

A. Yes, sir; it was stated in this way in the contract. Now to refer to another deal, the contract drawn out here (pointing to the east part of the city), it was for each one to pay such a share and then to assume any outstanding incumbrance.   This was drawn up in the same way.   The article set out that they took the property at so much

and assumed a mortgage for so much, and went on that way.

In contradiction of this evidence James C. Kay testified as follows:

Q. Have you the original memoranda made at the time you purchased your interest in June, 1887?

A. Yes, sir (producing check marked Exhibit J).

Q. What is that?

A. A check on the bank that I gave for the $140.

Q. Who drew that check up?

A. Mr. Bostwick.

Q. Did you sign any other paper?

A. No, sir.

Q. Did you sign any such paper or agreement as has been referred to in the testimony of Mr. Bostwick?

A. I don't remember anything of the kind.

W. H. Fuller testified as follows:

Q. You heard the testimony of Mr. Bostwick?

A. Yes, sir.

Q. State to the court when, if ever, you signed the written agreement giving authority to him as he has testified to.

A. I never signed any.

Joseph Boehmer testified:

Q. You heard the testimony of Mr. Bostwick?

A. Yes, sir.

Q. Did you ever sign any such agreement as he refers to?

A. No, sir.

Q. State if you ever had any conversation about such an agreement.

A. Mr. Halter said he had such an agreement, but that he would not sign it for himself, nor would be for any other.

Q. Where was that conversation?

A. In the bank at Lincoln.

Q. Did you act for Mr. Brotherton?

A. Yes, sir.

Q. Did you ever authorize any one to sign any such instrument for Mr. Brotherton?

A. No, sir.

The receipts referred to by Mr. Bostwick *mutatis mutandis* were in the following language:

" No. ——.                                     June 18, 1887.

"Received of W. H. Fuller, five hundred and seventy dollars, being one-twentieth interest in S. ½ S. E. ¼ section 8-7-9, Adams county, Nebraska, subject to a mortgage for $8,600 and interest thereon from March 29, 1887.

"$570.                              H. Bostwick, *Trustee*."

So far as any written instrument shows, there was no undertaking on the part of the *cestuis que trust*, personally, to pay the mortgage upon the property purchased. The evidence of Mr. Bostwick of a written agreement having been signed by all the parties, weakened as it was by his failure to produce or account for the absence of that very material writing, moreover, was flatly contradicted upon this very material point. It can scarcely escape notice that the petition made no reference to an express undertaking of the *cestuis que trust* to pay the mortgage, either written or otherwise. The averment nearest approaching this was "that the deed was taken by H. Bostwick for the *cestuis que trust* named and was made to H. Bostwick, and at the special instance and request of the said *cestuis que trust*, the other defendants aforesaid, the said H. Bostwick agreed and assumed to pay this mortgage of $8,600 to the plaintiff aforesaid; that by said deed, and the acceptance thereof, the said H. Bostwick and the *cestuis que trust*, defendants aforesaid, did assume and become personally responsible for the payment of said mortgage," etc. The evidence of Mr. Bostwick was therefore not merely contradicted, but was entirely irrelevant to the averments of the petition; for in the petition no claim was made that the *cestuis que trust* agreed to

pay the mortgage, but only that from their relations with
Mr. Bostwick that undertaking should be implied.    The
proofs which we have noticed had no tendency to support
any averment of the petition, and, therefore, should have
been disregarded. (See *Lipp v. Horbach*, 12 Neb., 371;
*Hobbie v. Zaepffel*, 17 Neb., 548; *Clarke v. Omaha & S. W.
R. Co.*, 5 Neb., 314; *Uppfalt v. Nelson*, 18 Neb., 533;
*Merchants Bank v. McConiga*, 8 Neb., 245; *German Ins.
Co. v. Fairbank*, 32 Neb., 750.)

In *Smith v. Wigton*, 35 Neb., 460, MAXWELL, C. J.,
delivering the opinion of this court, said: " The issue pre-
sented by the amended pleadings is the receipt and re-
tention of more than $3,000 of plaintiff's money by the
defendants.    The proof clearly shows that they collected
more than $10,000 on a judgment in favor of the plaint-
iff, and that they still retain more than $3,000.    If this is
retained in pursuance of a contract to that effect, it should
be pleaded." As an original question, it might, perhaps,
have admitted of doubt whether or not in a suit for the
foreclosure of a mortgage the personal liability of pur-
chasers who have assumed and agreed to pay such mort-
gage upon the premises should be enforced.    This propo-
sition, however, is now beyond question, for in *Cooper v.
Foss*, 15 Neb., 515, the rule was thus laid down: "The
holder of a note and mortgage where a third person has
bought the mortgaged premises, and as the whole or a part
of the consideration therefor has agreed with the mortgagor
to pay the mortgage debt, can sue such third person there-
for with or without foreclosure, or, upon foreclosure, if
there is a deficiency, can take judgment against him there-
for." This doctrine is approved in *Rockwell v. Blair Sav-
ings Bank*, 31 Neb., 128.    The liability is enforced because
the purchaser assumes and agrees to pay a sum certain
secured by the mortgage.    In the case last cited this lia-
bility was enforced, although it depended for proof upon
oral evidence alone.    This is upon the theory, doubtless,

.that, under the circumstances proved, the promise was an original promise, and therefore required no writing to evidence its existence. It is proper to join all grantees subsequent to the recording of a mortgage as defendants in a foreclosure thereof, and having been joined as a defendant the liability of one who has assumed payment of such mortgage may be enforced by a personal or a deficiency judgment, upon the theory that the court having jurisdiction in equity of the subject-matter for one purpose will afford a complete remedy as between all parties to the action. It is unnecessary to determine whether or not if the petition had stated fully the facts which it is claimed rendered liable the *cestuis que trust,* such *cestuis que trust* would have been proper parties against whom a personal or deficiency judgment could, upon proper proofs, have been rendered liable, for such facts were not pleaded, as has already been noted. The relation of these *cestuis que trust* to the purchase and consideration thereof, as stated in the petition, did not render them liable to a personal judgment in this action. Whether or not they might be liable personally for the deficiency is also doubtful, but is not a question which need be discussed, for no such judgment had been rendered at the time this appeal was taken. Indeed, none such has ever been rendered. A deficiency judgment could not be taken until a sale had been had and thereby the amount of the deficiency ascertained. It is true that a sale was had after the judgment appealed from was rendered and before the appeal to this court, but even after that sale there were no proceedings in the district court with a view of ascertaining or enforcing the liability alleged as against the appellees for a deficiency. The appeal was taken from a judgment whereby the court failed to declare a deficiency liability claimed to have been fixed before such ascertainment of liability was possible. On this appeal, therefore, it is impossible to hold the appellees as for a deficiency, for the very good and sufficient reason that that question was

never presented to or passed upon by the district court.
As has already been shown, no mere personal judgment
could be rendered against the appellees on the averments
of the petition.   Even had these averments been sufficient
to authorize such a judgment, there was a direct conflict in
the testimony as to whether or not the *cestuis que trust* as-
sumed the payment of the mortgage upon the premises
purchased.   This being true, the finding of the district
court in favor of the appellees, must be sustained in this
court (*Worthington v. Worthington*, 32 Neb., 334), and
this case must be governed by the principles enunciated
by MAXWELL, C. J., in *Reeves v. Wilcox*, 35 Neb., 779.
The pleadings and proof being in the condition which we
have stated, the district court very properly held that no
judgment could be rendered against the *cestuis que trust*
for which they would be held individually liable.

Ordinarily it is unnecessary to consider the manner in
which a bill of exceptions has been settled in determining the
merits of a case on rehearing.   In this case, however, this
becomes necessary on account of the facts to which reference
will hereinafter be made, and because the service of the pro-
posed bill of exceptions upon H. Bostwick, trustee, was in
the reported opinion held sufficient, for the reasons stated
in the following language: " The action was brought by
the plaintiff against all the defendants to subject the land in
suit to the satisfaction of the mortgage.   The trustee rep-
resented the *cestuis que trust*, and except in a contest be-
tween them, service of the bill of exceptions on him will be
sufficient."   In this case H. Bostwick filed no answer as
trustee or otherwise.   He filed a demurrer to the petition,
which demurrer was overruled, and, as the record recites,
there was judgment as to Bostwick on his demurrer.   He had
therefore no interest in the trial of the case upon the con-
tested facts, for judgment had already been rendered against
him upon a trial of questions of law.   It is, however, incor-
rect to assume that the service of the proposed bill of ex-

ceptions was made upon Mr. Bostwick alone. It is true that he was represented by M. A. Hartigan, Esq., but the same attorney appeared for Everett C. Sawyer and Alice E. Sawyer. For Everett C. Sawyer it was averred in his answer "that he, with the other defendants herein, purchased the lands described in the plaintiff's petition, since the making of the note and mortgage set out in plaintiff's petition, and at the time of such purchase this defendant was made trustee for the interest and estate of his co-defendants in said lands, to care for and manage the same, and that as such trustee he entered upon and took charge of the execution thereof, and in all things faithfully, prudently, properly, and in good faith administered the same as was most advantageous and beneficial; that he has laid out, incurred, and expended labor, time, attention, and care in the discharge of said trust, and paid out moneys therefor in the sums and amounts following:

"Services as trustee.................................... $500 00
"Defense in present suit ........................... 100 00
"Legal counsel and service....................... 400 00

"Amount ...................................$1,000 00"

Following this statement is the averment that no part of the $1,000 has been paid, with a prayer for the enforcement of the above claim. The answer of Alice Sawyer consisted of a denial of the averments of the petition upon information and belief, followed by a disclaimer of any interest whatever in the land described in the petition. The so-called "bill of exceptions" itself, on its title page, recites the appearances as follows:

"J. B. Cessna, as counsel for plaintiff."

"M. A. Hartigan, counsel for defendants Sawyer."

"Capps & McCreary, counsel for defendants Kay, Levy, Loeb, and Fuller."

"—— Bryan, Esq., counsel for defendants Halter, Boehmer, Hyde, and Brotherton."

The memoranda upon which the proposed bill of exceptions was settled were as follows:

"HASTINGS, July 11, 1889.

"Received the within bill of exceptions from M. A. Hartigan this day for inspection and amendment, to the end that the same may be settled and filed in said case.

"J. B. CESSNA, ·
"*Attorney for Plaintiff.*"

"HASTINGS, July 20, 1889.

"Received this bill of exceptions in return from J. B. Cessna, Esq., without suggesting amendments or corrections.                    M. A. HARTIGAN,
"*Attorney for Defendants, Appellees.*"

"HASTINGS, NEBRASKA, July 31, 1889.

"I enter my appearance in the supreme court and waive service of process; and it is hereby stipulated and agreed between the parties hereto and their attorneys aforesaid, that this bill of exceptions may be signed and settled by the clerk of the district court of Adams county, Nebraska.

"J. B. CESSNA,
"*Attorney for Plff.*
"M. A. HARTIGAN,
"*For Dfts.*"

Upon the alleged bill of exceptions was the following indorsement:

"STATE OF NEBRASKA, ⎰ ss.
ADAMS COUNTY.       ⎱

"The foregoing bill of exceptions taken and preserved in this action, and the same containing all the evidence offered or given by either party on the trial thereof and upon the stipulation herewith returned, allowing the clerk to settle and sign the same, said bill of exceptions is this day allowed, signed, and filed, and in all things made part of the record in this case.

"Dated July 31, 1889.          J. H. SPICER,
"*Clerk District Court.*"

At the date of the decree, May 21, 1889, there was al-
lowed forty days in which to settle a bill of exceptions.
The earliest acknowledgment of the receipt of the proposed
bill was on July 11, 1889, fifty-one days after May 21
aforesaid, no extension meantime having been allowed be-
yond the original forty days.

Attention has been called to some of the various anom-
alies which appeared in the alleged settlement of the bill
of exceptions, of which nature is, first, the fact that Mr.
Hartigan served it upon the attorney for plaintiff July 11,
1889; second, that Mr. Hartigan acknowledged receipt of
the same proposed bill of exceptions on July 20, 1889, for
the purpose of settling the same; third, that both these at-
torneys then in unison agreed that the proposed bill might
be settled by the clerk, by whom alone it is authenticated;
fourth, that the appellees who most strenuously insist upon
the correctness of the judgment of the district court, have
never in this case, either in the trial court or in this court,
been represented by Mr. M. A. Hartigan; fifth, that not-
withstanding this fact, the only consent on behalf of said
appellees is the consent evidenced by Mr. Hartigan's signa-
ture in their behalf.   The power to settle a bill of excep-
tions is delegated to the clerk (except in the event of the
death, sickness, or absence of the trial judge) only in cases
where all the parties in interest agree upon the bill of ex-
ceptions and when it shall have attached a written stipula-
tion to that effect. (Sec. 311, Code of Civil Procedure.)
In this the clerk exercises no judicial function in determin-
ing the correctness of the bill itself.   Its force is due solely
to the agreement assented to by all the parties interested.
If this essential element of unanimity is wanting, or if the
proposed bill is not assented to on behalf of all parties in
interest, it is not binding as a bill of exceptions.   Where
a proposed bill is presented within proper time to one of
the principal adverse parties, it is a sufficient compliance
with the statute authorizing the presiding judge to settle

the bill, even though all the adverse parties have not been served therewith. (*Crane Bros. Mfg. Co. v. Keck*, 35 Neb., 683.) In this respect there is a radical difference dependent upon whether the proposed bill is to be authenticated by the clerk or by the presiding judge, for the latter has a certain latitude. The former can only act upon the unanimous consent of all parties in interest. There was lacking this consent on behalf of several parties interested, and the bill of exceptions should therefore have been quashed upon the motion made for that purpose. The judgment of the district court is

AFFIRMED.