DUFF GREEN, APPELLEE, V. GEORGE W. HALL ET AL., IMPLEADED WITH EDWIN H. SHERWOOD ET AL., APPELLANTS.

FILED MAY 4, 1895. No. 5931.

1. **Mortgages:** ASSUMPTION OF PAYMENT BY PURCHASER OF LAND: EVIDENCE. An alleged agreement to pay an existing mortgage, as part of the consideration for the conveyance of mortgaged premises, is not established by recitations in the deed of conveyance that such deed is subject to said mortgage, nor a mere recitation that said mortgage is part of the consideration or purchase price.

2. ———: ———: ———. A binding assumption of the payment of a mortgage by the grantee in a deed which merely recites the existence of such mortgage on the premises conveyed, and that such mortgage is a part of the consideration or purchase price, cannot be established by proof that subsequent to the execution of such deed the grantee therein named, orally, and without consideration, promised the mortgagee that he would pay such mortgage.

3. ———: ———: ———: DEFICIENCY JUDGMENT. To entitle the holder of a mortgage to a deficiency judgment against a purchaser of the premises mortgaged the proofs must be such as would enable such mortgagee to maintain against such purchaser an action for the amount secured by said mortgage.

APPEAL from the district court of Douglas county. Heard below before DAVIS, J.

The facts are stated by the commissioner.

*E. W. Simeral* and *William Simeral,* for appellants:

Evidence of a parol agreement by the vendees to assume

payment of the mortgage is inadmissible. (*Lewis v. Day,* 53 Ia., 575; *Remington v. Palmer,* 62 N. Y., 31; *Conover v. Brown,* 29 N. J. Eq., 510.)

The recital in the deed that the land is sold subject to a mortgage should not be made the basis of a deficiency judgment against the purchaser. (Jones, Mortgages [2d ed.], sec. 751; *Bennett v. Bates,* 94 N. Y., 354.)

*Kennedy, Gilbert & Anderson, contra:*

The deficiency judgment is justified under the rulings in *Rockwell v. Blair Savings Bank,* 31 Neb., 128.

The following cases were also cited as to appellee's right to a deficiency judgment: *Marriman v. Moore,* 90 Pa. St., 78; *Crowell v. Hospital of St. Barnabas,* 27 N. J. Eq., 650; *Ferris v. Crawford,* 2 Denio [N. Y.], 595; *Wood v. Smith,* 51 Ia., 156; *Russell v. Ostrander,* 30 How. Pr. [N. Y.], 93; *Wright v. Briggs,* 99 Ind., 563; *Stover v. Tompkins,* 34 Neb., 465; *Dean v. Walker,* 107 Ill., 540.

RYAN, C.

This action was brought in the district court of Douglas county for the foreclosure of a mortgage made February 28, 1889, by the defendants George W. Hall and Helen M. Hall to plaintiff, securing payment of the sum of $6,000, due in five years from said date, which debt was evidenced by two promissory notes, one for $4,000 and the other for $2,000. On March 28, 1889, George W. Hall and his wife conveyed the mortgaged premises to Victor H. Coffman. This deed was by its terms subject to the above described mortgage, which mortgage was expressly excepted from the covenants of warranty. On the 14th day of October, 1889, Victor H. Coffman, his wife joining, conveyed the mortgaged premises to Arvilla Allyn. This deed was made expressly subject to the above mortgage. On February 20, 1890, Arvilla Allyn and her husband reconveyed the mortgaged property to Victor H. Coffman

as expressed in their deed, subject to the mortgage thereon. On the first day of April, 1890, Victor H. Coffman and his wife conveyed the said real property to Edwin H. Sherwood, likewise subject to the mortgage above described, and in the deed of conveyance it was further recited that the said mortgage was "part of the above mentioned consideration, or the purchase price" ($16,000). In the above mentioned petition for a foreclosure the aforesaid conveyances were identified in very general terms, following which descriptions the averments were as follows: "That each of said deeds, in express terms, is made subject to said mortgage of $6,000, and said mortgage debt is charged upon the purchase money in each deed as a part thereof, and said mortgage is expressly executed [probably excepted] in the covenant of warranty in each deed, and each grantee assumes and agrees to pay said mortgage debt and indemnify his grantor against the same.  *  *  *.  * That there is now due from said George W. Hall and his said grantees on said notes and mortgage the sum of $6,000, with interest, payable annually, at the rate of eight per cent per annum." Following the prayer for a foreclosure and a sale thereunder for satisfaction of the amount secured by the mortgage there was this language: "That on the coming in of the report of such sale, if the court find a balance of the mortgage debt remaining unsatisfied, the court decree, adjudge, and direct the payment thereof by said George W. Hall and his said grantees, viz., Edwin H. Sherwood, Victor H. Coffman, and Arvilla Allyn, according to their respective legal liability," etc. There was a foreclosure and sale, from which there were net proceeds sufficient to justify the application on the amount found due upon a confirmation of such credits as left a deficiency of $3,578.10, for which Edwin H. Sherwood, Victor H. Coffman, and Arvilla Allyn were held liable as recited in the decree, "upon the promissory notes set forth in the petition." From this deficiency judgment Sherwood and Coffman alone appeal.

The appellee confidently relies upon the case of *Rockwell v. Blair Savings Bank*, 31 Neb., 128, to sustain the personal judgment rendered against the appellants. In the case cited the Rockwells mortgaged to the bank certain real property which they afterwards conveyed to Isaac Tebury. A foreclosure was subsequently decreed in favor of the bank, and the mortgaged property sold, leaving unpaid a deficiency, for which the district court refused to enter judgment against Tebury, though judgment therefor was duly rendered against the Rockwells, by whom, on that account, error proceedings were prosecuted to this court. On the subject of Tebury's liability the language of the opinion was as follows: "Austin Rockwell and Isaac Tebury were the only persons who gave testimony as to the terms of the agreement for the sale of the lot. The testimony of these witnesses agrees that the purchase price was $2,500; that Tebury only paid the Rockwells $300; that he never agreed to pay the balance of the consideration to them, and gave no obligation for the remainder of the contract price. Tebury knew of the existence of the mortgage for $2,200 held by the bank when the sale was made, and after obtaining the deed he paid three installments of interest on the lien. Austin Rockwell also testified that Tebury agreed to pay the amount due the bank on the mortgage. This testimony is not overcome by the evidence of Tebury. * * * He makes no claim in his testimony that he only bought the Rockwells' equity of redemption, but admits that he was to pay $2,500 for the property; that he only paid $300 on the same, and that the mortgage holds the balance. The testimony establishes beyond any question that Tebury retained part of the purchase price to pay the $2,200 incumbrance. He thereby made the mortgage debt his own, and is, therefore, personally liable with the Rockwells for the amount of the deficiency remaining after the foreclosure of the mortgaged premises. In *Cooper v. Foss*, 15 Neb., 515, the same doctrine was held and applied by Chief Justice Cobb."

In the answer of the Rockwells it was alleged, in substance, as we learn from the opinion above quoted from, "that on the 24th day of March, 1887, they sold and conveyed the lot to Tebury, who, as a part of the purchase price, assumed and agreed to pay the said note and mortgage." In the case at bar it is doubtful whether or not there was an averment of an undertaking on the part of Coffman or Sherwood independently of the deed to each of them. The language, which has already been quoted so far as it relates to this subject, first stated what was believed by the pleader to be the legal effect of the language of the deeds described. By the petition it was charged that each conveyance was made subject to the existing mortgage and that by the language of each conveyance the mortgage debt was charged upon the purchase price in each deed as a part thereof, and that said mortgage was expressly excepted from the covenants of warranty in each deed, and that each grantee had assumed and agreed to pay said mortgage debt and indemnify his grantor against the same. It is possible to construe the averment last mentioned as one independent of the language of the deeds of conveyance. There are presented then by this petition, liberally construed, two questions; the one of the proper construction of the language of the deeds in question, the other a question of fact dependent upon oral evidence for proof of its existence. There was no conflict in the testimony given orally that the property was conveyed by the Halls to V. H. Coffman, subject to the above mortgage, in exchange for other real property also incumbered. The consideration recited in this deed to him therefore does not materially aid us as to the question of construction presented. The deed from Coffman to Arvilla Allyn and from Arvilla Allyn back to Coffman are scarcely referred to, much less explained, by the testimony adduced. The conveyance by Coffman to Sherwood was in consideration of other mortgaged property conveyed by Sherwood to Coffman. From a consid-

eration of the deeds, therefore, it cannot be said, or even assumed, that there was devolved upon each grantee an obligation to pay off the mortgage to Duff Green. The recitation in respect to this incumbrance found in the deed from Coffman to Sherwood, that it was "part of the above consideration or the purchase price," cuts no special figure, for that did not constitute such an agreement to pay the amount secured by the mortgage to Green, the mortgagee, that he could have obtained a personal judgment upon it against Sherwood, and this, in legal effect, was what was accomplished by the successful prayer for a deficiency judgment to the amount of the balance of the mortgage remaining unpaid after a sale on foreclosure. We conclude, therefore, that upon consideration of the terms of the deeds alone there was established against neither Coffman nor Sherwood such a liability to Duff Green as was enforceable by a deficiency judgment against either of them. The oral evidence showed, without contradiction, that in fact the deeds upon which Sherwood and Coffman were held liable personally were the consummations of exchanges of what witnesses describe as equities of redemption in the properties conveyed. In some states this term has an obvious signification, and from such states its use has probably been brought into this state, where it seems to be employed to describe such interest in real property as is retained by the owner after he has mortgaged it. Whether or not this is the general acceptation of this term is not so important, as that it was so accepted and understood by the parties and witnesses in this case. There was no agreement that there should be an undertaking by any one to pay the mortgage to Green. It was understood by all parties that the property was to be taken simply subject to Green's mortgage; in fact, so far as his rights were concerned, the agreements would have been fully expressed if nothing but quitclaim deeds had been used, for, in law, any purchaser of property upon which there is a mortgage duly recorded takes it sub-

ject to such mortgage.    The case of *Rockwell v. Blair Savings Bank, supra,* therefore furnishes no warrant for the recovery of a deficiency judgment in this case; indeed quite the contrary is the tendency of the reasoning therein. (*Reynolds v. Dietz,* 39 Neb., 180.)

It was attempted by the testimony of Duff Green to show that subsequent to the making of the deed to Coffman, and that to Sherwood, each of these trustees had orally promised to pay the amount secured by the mortgage held by Green.    This naked promise, if established by sufficient proof, was without consideration, and, considered by itself, was simply one to answer for the debt of another, and, therefore, not being in writing, was not enforceable.    The deficiency judgment of the district court against the appellants is·

REVERSED.