PETERS TRUST COMPANY, TRUSTEE, V. JOSEPH D. MISKIMINS
ET AL.: JAMES F. O'DONNELL, APPELLEE: WILLOW
GROVE LAND & CATTLE COMPANY, APPELLANT.

FILED DECEMBER 29, 1926. No. 24292.

1. Parol Evidence: ASSUMPTION OF MORTGAGE. The grantee in a
deed containing a clause that the grantee assumes and agrees to
pay certain mortgages on the land is ordinarily not estopped
from denying such recital, and may show by parol evidence that,
in fact, he never made such an agreement.

2. Mortgages: ASSUMPTION: INSUFFICIENT EVIDENCE. Evidence
examined, and *held* not to support the theory of cross-petitioner,
O'Donnell, that the defendant Willow Grove Land & Cattle Com-
pany assumed and agreed to pay his mortgage on the land.

APPEAL from the district court for Cherry county:
WILLIAM H. WESTOVER, JUDGE. *Reversed, with directions.*

O. M. Walcott, James C. Quigley and James J. Harring-
ton, for appellant.

W. B. Haley, J. A. Donohoe and M. F. Harrington, contra.

T. B. Dysart, for Peters Trust Company.

Heard before ROSE, DEAN, DAY, GOOD, THOMPSON and
EBERLY, JJ.

DAY, J.

The only question involved in this appeal is whether the
defendant, Willow Grove Land & Cattle Company, herein-
after called the cattle company, is liable for the payment of
a certain mortgage held by James F. O'Donnell by reason
of an assumption clause in a deed in which the cattle com-
pany is grantee.

The judgment of the trial court was to the effect that
the cattle company was liable for any deficiency which
might exist in the payment of the O'Donnell mortgage,
after the sale of the mortgaged premises.

The action was originally brought by the Peters Trust
Company against Joseph D. Miskimins et al. to foreclose a

mortgage for $28,000 upon 2,831 acres of land in Cherry county, Nebraska. James F. O'Donnell as the holder of the second mortgage on the land and the cattle company as the holder of the fee title were made parties defendant. No question is raised as to the correctness of the decree in so far as it relates to the Peters Trust Company mortgage. On March 28, 1919, the Miskimins people, who executed the Peters Trust Company mortgage, sold the land in question to Karl Ferrin and, in closing up the transaction, Ferrin executed two notes, one for $11,500 to Joseph D. Miskimins and one for $11,500 to Elizabeth Miskimins, secured by a second mortgage upon the tract of land above mentioned. On April 15, 1919, in due course of business, the two notes above mentioned and the mortgage securing the same were sold and assigned to James F. O'Donnell one of the defendants in this action.

On July 7, 1919, Ferrin and wife conveyed by warranty deed the land in question to the cattle company. This deed contained a clause as follows: "Subject to a mortgage of $28,000 given the Peters Trust Company, also a second mortgage of $22,000 to Elizabeth Miskimins and Joseph D. Miskimins and which the said Willow Grove Land & Cattle Company hereby assumes and agrees to pay together with the interest thereon from July 7, 1919." It is without dispute that the term $22,000 should have read $23,000. O'Donnell filed a cross-petition alleging ownership of the two notes for $11,500 each, together with the mortgage securing the same, and alleged facts which entitled him to foreclose his mortgage. He also set out the deed from Ferrin to the cattle company and prayed for a foreclosure of his mortgage, and if upon the sale of the mortgaged premises there was a deficiency, that judgment be rendered against the cattle company for the amount thereof by reason of the assumption clause in the deed.

The cattle company, in answer to O'Donnell's cross-petition, admitted that it was the owner of the title to the land; admitted that its deed contained the assumption clause as set forth in the cross-petition, but denied that it

ever assumed or agreed to pay the mortgages on the land
or either of them; that the words, "and which the said Wil-
low Grove Land & Cattle Company hereby assumes and
agrees to·pay together with the interest thereon from July
7, 1919," were no part of the contract of purchase and were
written in the deed by mistake of the scrivener and without
the knowledge and consent of the grantor or grantee; that
the cattle company purchased the land subject to the mort-
gages, but did not assume or agree to pay them or either
of them. O'Donnell's reply pleaded matters intended to be
an estoppel.

The case before us is one in equity, and under our statute
requires us to try the case *de novo* upon the evidence pre-
sented in the bill of exceptions and to reach an independent
conclusion without reference to the conclusion of the dis-
trict court.

It will be observed that O'Donnell purchased the notes
and received an assignment of the mortgage securing the
same several months before the execution of the deed from
Ferrin to the cattle company. Under the circumstances,
therefore, it could not be said that O'Donnell relied upon
the assumption clause in the deed in purchasing the notes
and mortgages. In *Hare v. Murphy*, 60 Neb. 135, the pur-
chaser of the mortgage debt had relied upon an assumption
clause in a deed which had been duly recorded. The court
held: "An agreement to pay a debt, although evidenced by
a recorded instrument, is not conclusive in favor of a party
who, in purchasing a lien against property, has acted on
the faith of the record," and that "The grantee in a deed
containing an assumption clause is not estopped from de-
nying the validity of the contract of assumption as against
a party who, relying on the recital in the instrument as
spread upon the public records, purchased the debt secured
by a mortgage on the land." Upon the authority of the
above case, it seems clear that a recital in a deed whereby
the grantee agrees to pay a mortgage is no essential part of
the deed of conveyance, and such recital may be disputed
by parol evidence.

It is the settled doctrine in this jurisdiction that, where a grantee in a deed assumes and agrees to pay a mortgage upon the land conveyed, the assumption contract inures to the benefit of the holder of the mortgage and he may sue thereon. The recital in a deed that the grantee assumes and agrees to pay the mortgage is not indisputable and may be contradicted by parol. One of the witnesses, who was the real estate agent who negotiated the exchange of the lands between Ferrin and the cattle company, testified that the agreement was that the cattle company was to take the Ferrin land subject to these two mortgages, and that it was no part of the agreement that the latter company was to assume and agree to pay the mortgages or either of them. The real estate agent represented both sides in bringing about the exchange of lands.

The scrivener who prepared the deed testified that the parties came in and had the deal all worked out and a memorandum of the transaction, "and in this transaction there were mortgages against the Ferrin ranch, a first mortgage to the Peters Trust Company for $28,000 and a second mortgage of $22,000 or $23,000 to Mrs. Miskimins. So they wanted to transfer that land to Kreycek subject to these mortgages." Kreycek was an officer of the cattle company. Witness further testified: "In the agreement there as I understood it, they were to take over their equity in the ranch. Q. In the Ferrin ranch? A. In the Ferrin ranch. And they left the matter of drawing up these papers all to me. * * * So this clause was simply a form I had always used in transactions of that kind where owners of land were transferring title where there were mortgages on them, and I just simply included that in it." He further testified that Ferrin was to pay the interest up to July 7, 1919, but not afterwards.

James S. Kreycek, who represented the cattle company in the deal, testified that it was no part of the consideration of the agreement that the cattle company was to assume or agree to pay either of these mortgages. He testified: "We were simply to take them subject to the mortgages." Fer-

rin, the grantor, testified in part as follows: "Q. In the deal, who was to pay that mortgage to the Peters Trust Company? A. There was nothing said to me about who was to pay it. * * * Q. They assumed the mortgages on this ranch. You were not to pay them, were you, Mr. Ferrin? A. They took the ranch subject to the mortgages, and there was nothing said to me about the mortgages. I suppose we talked it over in the bank. * * * Q. Let me ask you, then, if, in any of your preliminary conversations leading up to the completion of this deal, what your conversations were with relation to whether or not the Willow Grove took your ranch subject to mortgages or whether the Willow Grove was to take your land, assuming and agreeing to pay the mortgage lien? A. To my knowledge they never agreed to assume this loan, to the best of my knowledge. * * * Q. And isn't it a fact that with relation to the final payment of these mortgages you figured that the land itself would pay the mortgages in full? A. Yes; we thought the land was well worth the money."

Every one who was a witness in the case and cognizant of the details of the transaction seems to agree that the cattle company took the land subject to the mortgages, but did not assume and agree to pay them or either of them. Counsel for O'Donnell strongly urged that certain letters written by the cattle company indicate an intention on the part of the cattle company to pay the mortgage debt, and argue that these letters are corroborative of the assumption clause in the deed. It is true that the cattle company paid the interest on the O'Donnell mortgage, paid the taxes on the land, and probably intended to ultimately pay the two mortgages and save to itself the ranch property. To retain possession of the property, it was necessary probably that it pay the taxes and interest on the mortgages. The cattle company even wrote a letter to O'Donnell asking how much discount he would accept in settlement of his mortgage; but, as the cattle company had in mind a settlement of about 50 per cent. of the debt, the negotiations ceased. The conduct of the cattle company in regard to the pay-

ment of interest and taxes and the negotiations for a settlement was not at all inconsistent with its position that it did not assume the payment of the mortgages. It is quite probable that the cattle company intended, when it purchased the ranch, to pay the incumbrances, as at that time land values were advancing, but that is a far different matter from agreeing to do so. There is some proof that in former litigations the cattle company took a position which seems a little inconsistent with its present position, but the matter referred to did not rise to the dignity of an estoppel. It is a circumstance, however, to be considered in determining whether the assumption clause spoke the truth. O'Donnell did not change his position by reason of these facts. In our opinion, the most that can be said of the cattle company's position at that time is that it tended to corroborate the assumption clause in the deed. The mere fact that the cattle company took no steps to have the deed reformed after knowledge of the assumption clause is not at all conclusive. The principles herein stated find support in our own decisions. *Hare v. Murphy,* 60 Neb. 135; *Green v. Hall,* 45 Neb. 89; *Durland Trust Co. v. Payne,* 106 Neb. 135. The facts in *Cruzen v. Pottle,* 3 Neb. (Unof.) 453, are so different from these in the case before us as to be easily distinguished. In that case the mortgagee changed his position by giving the grantee in the deed an extension of time in which to pay the mortgage.

After reviewing the entire record and giving due weight to the assumption clause in the deed and the conduct of the cattle company, we are quite convinced that the cattle company never in fact assumed and agreed to pay the O'Donnell mortgage. We think the district court was wrong in holding the cattle company liable to O'Donnell for any deficiency which might arise after the sale of the mortgaged premises. The judgment of the district court is reversed and the cause remanded, with directions to so modify the judgment that the cattle company will not be held liable for the payment of any part of the mortgage debt.

REVERSED.