SMITH *vs.* HARLEY ET AL.

Although the assignee of a note not negotiable cannot sue a remote assignee at law, yet he may in equity. A court of equity will give a remedy by making him immediately liable who is ultimately liable, on the principle that the court entertains jurisdiction to avoid multiplicity of suits: and in such case the original assignor may make the same defence against the remote · that he could make against his immediate assignee.

APPEAL from Cooper Circuit Court.

HAYDEN, *for Appellant.*

1. The note mentioned in the bill is not a negotiable note within our statute defining what notes are negotiable, and therefore, the complainant could not sue Harley at law, he being a remote endorser, but he may maintain his suit in equity against him for the debt.— See 2 Story's Equity, and authorities there; 5 Cranch, 322; 7 *Ibid.*, 69, 97; 1 Brockenborough Circuit Court Rep., 126; 2 Condensed United States Rep., 268, Riddle & Co. *vs.* Mandeville & Jamison.

CLINTON *and* RICHARDSON, *for Appellees.*

1. The note upon which the bill is founded is not negotiable, as defined by the sixth section of the act of the General Assembly, entitled "Bonds and Notes," approved February 4th, 1835, and is not therefore *mercantile paper*, or upon the footing of inland bills of exchange, according to said statute.— See 1 Pirtle's Digest, 354; 2 J. J. Marshall's Rep., 135, Rich, &c. *vs.* Catterson; 4 Johns. Chan. Rep., 687, McDurmutt et al. *vs.* Strong; 4 *Ibid.*, 681, (top page) A.Williams *vs.* Brown et al.; 2 *Ibid.*, 283; 4 *Ibid.*, 671.

2. The plaintiff's bill is bad, because a most material allegation in the same is stated *in the alternative;* viz.: that one of the defendants, Murphy, is *insolvent, or if not insolvent,* so involved in debt that it would be useless to sue him.— Story's Equity Pleading, 208, 209, 210, 392; Cresset *vs.* Multon, 1 Ves., jun., 449.

The case referred to by the appellant, in Peters' Reports, is not in point, because the instrument upon which that suit was founded was upon the footing of an inland bill of exchange, according to the Virginia law.

SCOTT, *Judge, delivered the opinion of the Court.*

This was a bill in chancery brought by Smith against Harley and others. On a demurrer, there was a decree entered dismissing the bill. The bill alleges, that David and William Workman executed their promissory note to Harley for $500; that Harley afterwards assigned the note to Murphy, and Murphy to Smith, the complainant. It is also alleged, that the makers of the note, David and William

*Smith* vs. *Harley et al.*

Workman, are insolvent, so that a suit against them would be unavailing, and that Murphy, the assignor of the complainant, is also insolvent, or if not insolvent, very much embarrassed and involved in debt, so much so, as it was believed, that it would be useless and unavailing to bring a suit against him.    The demurrer to the bill, it seems, was sustained, because the insolvency of Murphy, the assignor of the note to the complainant, Smith, was not alleged with sufficient certainty.

Our statute gives an action to the assignee of a note against the assignor, upon failure to collect it, using due diligence for that purpose; or upon showing that the maker is a non-resident of the State, or that a suit against him would be unavailing.    In the construction of a statute concerning bonds and notes, similar to ours, it is held by the courts of Virginia and the Supreme Court of the United States, that independent of any statute, an action would lie by the assignee of a note against the assignor, in the event of a failure to collect it from the maker after diligently instituting and prosecuting a suit for that purpose; that it was not like the sale of any other chattel; that though the statute might give no action against the assignor, yet it resulted, on common law principles, from the debt which the assignment implies, and the promise which the law raises by the assignor to the assignee, that if the assignee, using due diligence, fails to recover of the maker, he will repay the consideration which he received for the paper. It is, however, maintained, that this implied promise extends only to the immediate assignee, and to give none other than him a right of action against the assignor, so that no assignee could sue a remote assignor, there being no privity of contract between them.— Mackie *vs.* Davis, 2 Wash., 219; Maudeville *vs.* Riddle, 1 Cranch, 290.

Although the assignee could not sue a remote assignor at law, yet it was held he might in equity.    A subsequent assignor, in assigning a note, is understood to transfer to his assignee his right of action against his immediate assignor.    This right is found on a contract not assignable at law, yet, as it is capable of being transferred in equity, it vests as an equitable interest in the holder of the note. If it is transferable in equity, equity will give a remedy by making him immediately liable who is ultimately so, on the principle, that it entertains jurisdiction to avoid multiplicity of action.    The original assignor sustains no injury by this course; he will make the same defence against the remote, that he would against his immediate assignee.    Otherwise, if there were ten assignments, each assignee would sue his immediate assignor at law, and so on till the first assignor was reached; the amount of the note would be expended in the pursuit.    A court of equity brings all the assignors before it, and in one suit does justice amongst the parties; and the defendant has a right to have all the assignors made parties to the proceedings. In the case of Riddle *vs.* Maudeville and Jamison, (5 Cr., 122,) it is said, there is no objection to such a course; no principle is violated.    Its analogy to the familiar case of a creditor suing, by a bill in equity, the legatees of an estate, is not remote. If an executor has distributed the estate of his testator, a creditor can only sue the executor at law, and he has a remedy over against the legatees.    The creditor cannot sue the legatees at law; yet he has never been confined to his action at law: he may bring both the executor and legatees before a court of equity, and

obtain at once satisfaction of his demand from the legatees, who are ultimately liable.

Although, in the case above-cited, some stress was laid on the fact that the immediate assignor was insolvent, and therefore the right to relief in equity unquestionable, yet it is evident, from the reasoning of the court, that the insolvency of the immediate assignor is not the ground on which a court of chancery entertains jurisdiction, but its action in such cases is founded on general principles of equity law.

The other judges concurring, the decree below is reversed, and the cause remanded.