## MAGGIE R. FLAGG

*v.*

## JOHN GELTMACHER.

*Filed at Springfield March 21, 1881.*

1. LANDLORD AND TENANT—*attornment after recovery, for possession, is valid.* Where a tenant, after the sale of the demised premises, attorns to the purchaser, but after a judgment against him for the recovery of possession in favor of his original landlord, in an action of forcible detainer, paid such landlord's attorney one month's rent, and agreed with such landlord to deposit all subsequent rents in the bank, the arrangement, whether fairly made or not, will amount to a valid attornment to the former landlord, and creates the relation of landlord and tenant between them.

2. TRUST DEED—*when payment by original grantor does not extinguish the debt or discharge lien.* Where the owner of real estate, after having given a deed of trust thereon to secure the payment of a loan to him, conveyed the premises to another, subject to the incumbrance, which the purchaser expressly agreed to assume and discharge, and he conveys to another, and he to a third purchaser in the same way: *Held,* that each of the subsequent purchasers became an original promisor for the payment of the incumbrance, and accepted the place of an original mortgagor as to the condition of his title, and the original debtor became virtually a surety for the payment of the debt to the creditor, and had the right to pay the same when due, if he chose, without cancelling the debt as to them, or releasing the lien, and after such payment by him, to become the purchaser at the trustee's sale.

98   293
28a 644
98   293
154   91
98   293
59a 273
98   293
106a ²435

APPEAL from the Circuit Court of McLean county; the Hon. FRANKLIN BLADES, Judge, presiding.

Mr. WILLIAM E. HUGHES, for the appellant:

1. If the power of sale contained in a mortgage be extinguished by payment of the debt, or otherwise, no title will pass by sale under it even to a *bona fide* purchaser. *Redmond* v. *Packenham,* 66 Ill. 434; *Wade* v. *Harper,* 3 Yerger, 383; *Prenny* v. *Cook,* 19 Ia. 538; *Cameron* v. *Irwin,* 5 Hill (N. Y.) 272.

2. If the debt be paid, the power of sale in the mortgage, and the mortgage itself, are extinguished and no longer have effect. *Redmond* v. *Packenham et al. supra; Emory* v. *Keighan,* 94 Ill. 543.

3. If the principal debtor pay the mortgage debt, the mortgage is thereby extinguished. *Kinley* v. *Hall,* 4 Watts & Serg. (Pa.) 426; *Thompson* v. *Van Vetchen,* 27 N. Y. 568.

4. A mortgage is only an incident to the debt. Whatever extinguishes or bars the debt, operates in like manner on the mortgage. *Pollock* v. *Marson,* 41 Ill. 516; *Perkins* v. *Steam,* 23 Texas, 561; *Brigg* v. *Seymour,* 17 Wis. 255; *Anderson et al.* v. *Neff,* 11 Serg. & Rawle, 108.

5. Whitmer, after he received the notes from Holmes, could not have recovered upon them in a suit against Geltmacher, because the latter and not the former had really paid them, and it therefore follows, that when Holmes sold them there was no mortgage under which to sell.

Subrogation is not extended, in Illinois, to one paying his own debt. *Rogers* v. *Meyers et al.* 68 Ill. 92.

Mr. H. G. REEVES, and Messrs. FIFER & PHILLIPS, for the appellee:

We maintain that the mortgaged premises are a primary fund for the payment of the debt. *Lilly* v. *Palmer,* 51 Ill. 331.

Geltmacher having sold the property in such manner as to bind his grantees for the payment of the Holmes debt, not only is the property holden as to Geltmacher's immediate grantee, but also as to all subsequent grantees. Geltmacher could have directly paid the debt of Holmes and still have kept alive the trust deed, or he could have had the bonds assigned by Holmes to an assignee of his own choosing, which he did do, and thus more clearly indicate his intent to keep alive the lien of the trust deed, and, in either event, Geltmacher or the assignee is subrogated to all of Holmes' rights, and a sale under the trust deed is valid. *Johnson* v. *Zink,* 51 N. Y. 333.

Geltmacher stands, as between himself and his grantees, and all claiming under them, as mere surety for the payment of his debt, and has unquestionably the right to be subrogated. *Matthews* v. *Aiken,* 1 N. Y. 595; *Hoy* v. *Bramhall et al.* 4 N. J. 573; *Hall, Admr.* v. *Hoxsey et al.* 84 Ill. 716; Jones on Mortgages, §§ 878, 879.

Geltmacher, being pressed for payment, could have these notes of Holmes taken up and enforce their payment, by a sale of the property. *Stanford* v. *McLean,* 3 Paige, 117; *Jummell* v. *Jummell,* 7 id. 591; *Holsey et al.* v. *Reed et al.* 9 id. 446; *Maosh* v. *Pike,* 10 id. 595; *Cheny* v. *Manro,* 2 Barb. Ch. 618; *Comell* v. *Prescott,* id. (S. Ct.) 15.

The doctrine of subrogation, applicable to this case, is clearly set forth, as we think, in *Billings* v. *Sprague,* 49 Ill. 509; *Fisher* v. *Dillon,* 62 id. 379; *City National Bank* v. *Dudgeon,* 65 id. 11; *Darst* v. *Bates et al.* 95 id. 493; *Beaver* v. *Slanker,* 94 id. 175.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellee was, on the 17th of February, 1873, the owner of lots 7 and 10, in block 1, in Durley's addition to the city of Bloomington. He, on that date, borrowed of Rufus E. Holmes $3000, and gave him three bonds of $1000 each,

with interest coupons attached, and the debt, by the terms of the bonds, matured on the 17th of February, 1878. To secure the payment of these bonds, he executed a trust deed to Henry C. Wilson, with G. W. Toms as Wilson's successor in the trust, which was duly recorded.

Afterwards, on the 25th of March, 1873, appellee conveyed these lots to Deborah and Elizabeth Simmons, by warranty deed, but it contained this clause:

"This deed is made, notwithstanding the covenants of warranty hereinafter expressed, subject to the incumbrance of one certain trust deed, executed by said first parties to Henry C. Wilson, trustee, for the use of Rufus E. Holmes, to secure three bonds of $1000 each, with coupons attached for semi-annual interest, at the rate of ten per cent, which is made due five years after date, and dated February 17, 1873, and duly recorded in the recorder's office of McLean county, Illinois, in book 49, at pages 128 and 129, said second parties hereby agreeing to pay off said incumbrance as part of the purchase money of said premises."

On the tenth of April, 1874, Deborah and Elizabeth Simmons sold and conveyed these lots to Sophia E. McCaughey, with the same stipulation in the deed as that in the deed to grantors from appellee to them.

On the first of November, 1875, Sophia E. McCaughey conveyed the lots to William F. Flagg, the husband of appellant, but subsequently his name was erased as grantee, and that of Maggie R. Flagg inserted. This conveyance is, in the same manner, made subject to the Holmes incumbrance, but has these words: "Wm. F. Flagg agrees to pay off the same."

When the bonds to Holmes became due, Peter Whitmire, president of the People's Bank of Bloomington, at the request of appellee, and being secured therefor by appellee, paid Holmes $3150, the amount due on the bonds, and took from Holmes an assignment of the debt to himself, and demanded payment from appellant, but she refused to pay.

Afterwards, and before the property was sold under the deed of trust, appellee paid to the bank the money advanced by the president, and paid Holmes; and on the 17th of February, 1879, Toms, the trustee, sold the property under the trust deed, and appellee became the purchaser and received a deed. He then arranged with the tenant of appellant, then in possession of the property, to recognize him as landlord.

Appellant thereupon instituted a proceeding in forcible detainer, and recovered judgment for possession. Thereupon appellee instituted this action of ejectment for the recovery of the property. The case was tried by the court and a jury, resulting in a verdict in favor of plaintiff, upon which a judgment was rendered against defendant, and a writ of possession was awarded, and she appeals to this court and assigns errors on the record.

It is urged that the tenant in possession, and sued in this suit, was in under appellee and not under appellant, and, therefore the suit will not lie. We think this position is not sustained by the evidence. Appellant sued in forcible detainer and recovered judgment for the possession of the property, and Cowen, who was then in, went to appellant's attorney and paid him $20, a month's rent, for her, and it was arranged that he should deposit the next month's rent in the bank. Cowen made an arrangement with appellant to deposit all rents in the bank.

But it is claimed that she consented to the arrangement on the false assurance that such an arrangement had been made with her attorneys. Even if such be the fact, it is not disputed that he paid one month's rent to her for the use of the premises, and, whether fairly or not, agreed with her to pay the subsequently accruing rent into the bank. There can be no doubt this was a valid attornment to her as landlord. On these facts she could have sued him and recovered rent. Nor could he have denied that the relation of landlord and tenant existed between them. And, if so, that amounted to an attornment to her as owner and landlord; and, if her tenant,

appellee could sue, and if he held a legal title superior to her, he could recover.

The only other question pressed on our attention is this: was the trust deed when Toms sold and appellee purchased, a subsisting lien on the premises, or was the debt to secure which it was given, paid and the lien discharged and the power of the trustee to sell extinguished? If the debt was, in its full sense, paid, then the power of the trustee was at an end.

But it is contended that the debt was not so paid as to extinguish the lien for the money. Holmes was paid, it is true, but did that release the land?

There can be no pretence that the purchaser from appellee, and each subsequent purchaser of the lots, including appellant, took the property charged, by express stipulation in the various deeds, with the payment of the debt to Holmes. And there is no pretence that they or either of them paid the debt, but appellee did pay all of the interest, except the last installment, before the maturity of the debt. And she refused to refund the money to Whitmire when it was demanded. Appellee was compelled to pay the money to protect his rights, by preventing the property from being sold at a sacrifice. As his grantee, and each subsequent grantee purchased, they, as a part of the purchase money of the lots, agreed to pay the Holmes debt and free the property from the lien of the trust deed, but he was still liable on his bonds to Holmes, and so was the property. No principle of justice required appellee to pay Holmes for the benefit of appellant. That was a duty she assumed, or lose the property. Appellant was liable to Holmes and not to appellee; and when appellee paid the debt, it was for his own protection, and appellant refused to repay and never has refunded it to him. Surely no one can or will contend for so unjust a proposition as that appellant may hold the property and refuse to pay for it. Such a proposition can find no sanction in the books or any code of morals.

Appellee was under no legal or moral obligation to protect the rights of appellant. Their relations were such that he could deal with the property as any other stranger.

Had she created this incumbrance after she purchased, appellee would have had the undoubted right to purchase at the trustee's sale. She agreed to pay the incumbrance, and received a full consideration in the price of the land, and on her failing to perform that duty why may he not purchase and acquire the title?

Nor does it matter that he procured the money from the bank and paid Holmes, and had the bonds assigned to Whitmire. That did not discharge appellant's duty to pay and release the land. Nor did it release the land from the lien. Had Whitmire paid his own money without appellee giving his note to the bank, all would see the lien was not extinguished or the debt satisfied. That would have but changed the owners of the lien. Appellant could not have claimed such a payment to Holmes would release the lien or terminate the power of the trustee to sell. When she purchased she recognized the lien and agreed to pay it or the land might be sold to satisfy it, and failing to pay, upon what grounds can she insist that appellee shall pay, or when he pays, the lien shall not inure to his benefit, or that he shall not purchase precisely as might a stranger to the transaction?

Each subsequent purchaser became, by the terms of the stipulations contained in these deeds, an original promisor for the payment of the Holmes debt, and accepted the place of an original mortgagor, as to the condition of his title, and appellee became virtually a surety for its payment to the creditor. And as such he had the right to pay if he chose, without canceling the debt as to them. He could therefore become the purchaser at the trustee's sale.

The payment, whether by Whitmire or appellee, did not discharge the lien against the land in favor of appellee, but as to appellant it operated as an assignment of the debt, and

did not terminate the power of the trustee to sell or appellee to purchase the legal title and to recover and hold the land.

Inasmuch as appellee has shown the superior legal title, he was entitled to recover, and the judgment of the court below must be affirmed.

*Judgment affirmed.*