NATHAN MERRIAM v. ANDREW MILES, EXECUTOR, ET AL.

FILED APRIL 8, 1898. No. 7901.

1. **Principal and Surety**: ASSUMPTION OF MORTGAGE: CO-TENANTS. One of several co-tenants of land incumbered by mortgage, who buys the interest of his co-tenants and, as a part of the considera-

tion, assumes and agrees to pay the mortgage debt, becomes, as among the parties to that contract, the principal debtor, and the vendors become his sureties.

2. ———: ———: ———. While, by such a transaction, the rights or duties of the mortgagee cannot be changed without his consent, and he may enforce his original contract according to its terms, still, if he makes new contracts with the parties to the agreement, with knowledge thereof, he must do so with regard to the rights of those who are, among the mortgagors, sureties.

3. ———: ———: EXTENSION OF TIME FOR PAYMENT. Therefore, if, with knowledge of the changed relationship of the mortgagors, as among themselves, one purchases the notes secured by the mortgage, and at the same time enters into a contract, on valid consideration, to definitely extend the time of payment by him who has become the principal debtor, and this without the consent of the sureties, he thereby releases the sureties.

4. ———: ———: ———: NOTICE. Evidence examined, and *held* insufficient to show that the creditor in such a case had not notice of the relationship of the debtors to one another.

ERROR from the district court of Douglas county. Tried below before AMBROSE, J.   *Reversed.*

*Wharton & Baird,* for plaintiff in error.

*F. B. Tiffany* and *W. T. Nelson, contra.*

IRVINE, C.

Andrew Miles and James W. Vinton, executors of the will of John L. Miles, deceased, and James Thompson brought this action against Nathan Merriam, Charles T. Brown, Patrick Egan, and H. J. Cosgrove to recover on eight promissory notes for $1,000 each, executed by the defendants to William M. Clark and transferred to John L. Miles and James Thompson. Of the defendants, Merriam alone was served with process. As a defense he pleaded that the notes were made to Clark in part payment for a tract of land purchased jointly by the makers, and were secured by mortgage on the land purchased, which was afterwards platted into lots as an addition to Lincoln; that, before the notes were sold to Miles and Thompson, Merriam, ·Egan, and Cosgrove sold their re-

spective interests in the land to Brown, their co-tenant, and co-maker of the notes, who, in the deed of conveyance and as a part of the consideration assumed and agreed to pay these notes; that afterwards, for a valuable consideration, Miles and Thompson entered into a written agreement with Brown, whereby they extended the time of payment for four years, and agreed to accept partial payments on certain designated terms, and also agreed to and did release from the lien of said mortgage twenty-eight of the lots included therein; that Merriam was not a party to such agreement, and that, "as between said Brown and this defendant, this defendant was and remained only a surety upon said notes, which was well and fully understood by the said Miles and Thompson at the date of the execution and delivery of said agreement." The reply contains a peculiar negative pregnant in meeting the last averment quoted from the answer. It is as follows: "Plaintiffs deny that as to the payment of the notes set out in plaintiffs' petition Charles T. Brown became the principal and the defendant Merriam surety thereon, with the full understanding of the said John L. Miles and James Thompson at the date of the purchase of said notes." This is followed by averments that at the time of the purchase of the notes five of them were overdue and the time of payment had been extended by the then holder, and that the written agreement made by Miles and Thompson was merely in ratification of the agreement for an extension theretofore in force. The court, the case having been tried without a jury, found specially the facts almost as the defendant asserted them, but on the issue of notice to Miles and Thompson of the changed relationship between Brown and the other makers found that they had no notice thereof and did not consent thereto. On these findings it was held that Merriam was not discharged, but that he was entitled to a deduction from the amount of the notes of the value of the twenty-eight lots released by Miles and Thompson from the lien of the mortgage. Judgment was entered against

Merriam for the amount thus ascertained, and Merriam has brought the case here for review. There can be no doubt of the correctness of the findings of fact, except with regard to notice. Indeed defendant in error concedes that the facts are not open to dispute except as to the change in relationship between Brown and his comakers, and with regard to notice; and on the former issue the ultimate facts are not open to controversy. It is shown beyond peradventure that Brown bought the property and as a part of the consideration agreed to pay the debt. It is not shown that the holder of the note was a party to that contract. The only question here is as to the legal effect of those facts on the duties of the holder.

It is asserted on behalf of the plaintiffs that, unless the holder was a party to the agreement, or afterwards ratified it and accepted the new liabilities thereby created, he was not bound in any respect thereby, and could for all purposes continue to treat all the parties to the instruments as principals and deal with them on that basis. We do not think that so broad a statement of the law is warranted by reason or the authorities, although some cases are found which go to that extent. The doctrine has been frequently recognized by this court that, where one buys land incumbered by a mortgage, and covenants to pay the mortgage debt, or as part of the consideration assumes the payment thereof, his promise creates a principal obligation which the mortgagee may enforce against him. (*Cooper v. Foss*, 15 Neb. 515; *Keedle v. Flack*, 27 Neb. 836; *Rockwell v. Blair Savings Bank*, 31 Neb. 128; *Reynolds v. Dietz*, 39 Neb. 180; *Grand Island Savings & Loan Ass'n. v. Moore*, 40 Neb. 686; *Meehan v. First Nat. Bank of Fairfield*, 44 Neb. 213; *Green v. Hall*, 45 Neb. 89.) It follows, as a logical consequence, that thereupon the vendor becomes in effect a surety, and the vendee the principal debtor, that is between themselves. (*Paine v. Jones*, 76 N. Y. 274; *Huyler v. Atwood*, 26 N. J. Eq. 504; *Flagg v. Geltmacher*, 98 Ill. 293.) Of course there can be no change without the knowledge and consent of the mortgagee which can affect

his rights. He need not look at all to the vendee unless he so elects. He need surrender no rights against the vendor unless he so elects; but it by no means follows that because he is not contractually bound by the contract between them, he may, after learning thereof, enter into new relations with one of the parties, in disregard of the rights of the other. He may enforce his rights as they before existed, but if he undertakes, after notice of the changed relationship between the other parties, to deal with one of them by changing his own contractual obligations with him, he must regard the rights which he knows the third person has acquired. The rule which releases a surety, when the creditor, without the surety's consent, enters into a valid contract extending the time of payment, is founded on equitable considerations, and does not arise from an implied provision of the original contract. Where the relationship is, or has become, that of principal and surety, the duty to regard the surety's rights exists, although the creditor may himself sustain such a relationship that in enforcing his own rights he may treat both as principals. In practically all the cases on this subject the duty of the creditor in this behalf is made to arise from his knowledge of the relationship existing between the debtors as between themselves, not upon the existence of the relationship of principal and surety as between them and the creditor. In *Paine v. Jones, supra*, a mortgagee, with knowledge that the land had been sold and that the vendee had assumed the debt, agreed with the vendee to abrogate a clause in the mortgage whereby the mortgagor, on partial payment, might require partial releases of the land mortgaged. It was held that the mortgagee "was under an equitable obligation to do nothing to affect or alter the rights of the surety," and that the vendor was therefore discharged. So in many cases similar in principle, the discharge of the surety is made to depend on the knowledge by the creditor of the existence of the relationship between principal and surety, and not on the form or nature of the contract

as between the creditor and the debtors. (*Bank of British Columbia v. Jeffs,* 15 Wash. 230; *Behrns v. Rogers,* 40 S. W. Rep. [Tex.] 419; *Wilson v. Foot,* 11 Met. [Mass.] 285; *Morgan v. Thompson,* 60 Ia. 280; *Lamson v. First Nat. Bank,* 82 Ind. 21.) It is not necessary, for reasons which will presently appear, to determine whether this knowledge must exist at the time one becomes a creditor, or whether it binds the creditor if possessed at the time the extension is given. We conclude on this branch of the case that while the holders of the note were not parties to the contract changing the mutual relationship of the makers, still Brown had, as between him and Merriam, become the principal debtor and Merriam the surety, and that the plaintiffs were bound to do nothing to injure Merriam, by way of extension or otherwise, if they knew of that relationship at the time they bought the notes—perhaps at the time they made the extension.

The case therefore turns on the fact of notice, and we shall treat the averment quoted from the reply as putting that fact in issue, and examine the evidence to ascertain whether the special finding thereon is sustained by the evidence. It appears that the notes sued on had passed from Clark, the payee, to the Clark & Leonard Investment Company, and that five of them were some months overdue. Brown desired an extension thereof and himself arranged with Miles and Thompson to buy them and grant the extension. He paid Miles and Thompson about $1,000 as a bonus to induce them to purchase the notes and grant the desired extension. After this was negotiated a representative of the investment company took the notes to Omaha and there the transfer was completed, the written agreement for an extension being made the same day and evidently as a part of the same transaction. Brown negotiated both the sale and the extension, and it was his desire for the extension that led him to bring about the sale. This contract for the extension recites the purchase by Miles and Thompson, "this day," of the notes in suit and one other, and that "Charles T. Brown is the present

owner of said addition and agrees to pay the said notes as hereinafter agreed upon." Then follow the terms of the extension and the agreement pleaded to release twenty-eight lots from the mortgage lien. This was certainly evidence tending very strongly to show that Miles and Thompson had knowledge of Brown's and consequently of Merriam's position. It expressly recites the transfer of the property to Brown, or at least the present owner-ship in Brown, and it is not contended that the nature of the paper and the former condition of the title were un-known. Indeed Brown testifies that Miles visited the land with him and examined it to ascertain whether it afforded sufficient security, showing that Miles and Thompson were buying with reference to the mortgage and must have been on inquiry as to title. It does not appear that they had actual notice of the deed to Brown, which discloses his obligations to the former owners, and we need not decide whether they were charged with notice, because, in addition to the very strong evidence afforded from the recitals in the contract, and the circum-stances leading to the sale of the notes, Brown testifies that John L. Miles actually knew of his purchase of the property. Against this we have only the testimony of Andrew Miles that he did not know of these facts. An-drew Miles was a book-keeper for Miles and Thompson, and seems to have taken an active part in the final trans-fer of the paper, but he does not say that he knew all that the purchasers themselves knew. He indeed says that he does not know what knowledge his brother, John L. Miles, possessed, and Brown testifies, without contradiction, that it was with John L. Miles that the negotiations took place, and he did know. Andrew's testimony as to his own ignorance is clearly insufficient, in view of the con-tract itself and the other evidence, to sustain the finding that Miles and Thompson had not notice.

It is asserted that the extension had been granted be-fore the notes were sold; that the written contract was merely evidence of a ratification thereof by the purchas-

ers. This assertion is founded upon a memorandum appearing on the back of each note, "payment of within note extended to March 17, 1893." Anarew Miles testifies that this was on the notes when they came into his charge on the day of purchase. There is no evidence as to who made the memorandum or why it was made or when, except that when Andrew Miles got the notes it was there. Brown, however, testifies that there had been no extension by the former holders so far as he knew, and the irresistible inference from all the proof is that the very purpose of the sale was to procure the extension. The indorsement may have been made, and probably was made, contemporaneously with the sale to plaintiffs. Certainly the unexplained memorandum cannot be taken to prove an extension for a valid consideration by the former holders. We are compelled to hold that the finding that plaintiffs were without notice of the rights of Merriam is not sustained by the evidence in the case.

REVERSED AND REMANDED.