JACOB FINZER, APPELLEE, V. GUSTAV PETER ET AL., APPELLEES: J. L. JOBES, APPELLANT.

FILED OCTOBER 31, 1930. No. 27256.

*Lewis C. Westwood* and *Peterson & Devoe,* for appellant.

*Jay C. Moore, Charles A. Dafoe, Hainer, Flansburg & Lee* and *William G. Rutledge, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON and EBERLY, JJ., and THOMSEN, District Judge.

THOMSEN, District Judge.

Finzer mortgaged his farm to Peter, and shortly thereafter sold the land. The grantee, in the deed he received,

assumed and agreed to pay the mortgage, and in three subsequent successive sales each grantee assumed and agreed to pay the mortgage. While number three of these grantees held title, the mortgage became due, and by an arrangement with Peter, the mortgagee, the time for payment was twice extended, each time one year. During the last year number four acquired title, and, when that year ended, he likewise had granted to him an additional year to meet the obligation. None of these extensions was known to Finzer or the other grantees. When the final extension had expired, number four failed to pay. The mortgage Peter had received was a second one. One infers from the record that the value of the land had been absorbed by foreclosure of the first mortgage, so Peter chose to sue Finzer on the note which his mortgage secured. Finzer claimed that the extension of time for payment granted without his knowledge or consent released him, and relying upon *Merriam v. Miles,* 54 Neb. 566, in which we held that the maker and subsequent grantees under the conditions would be released, the case ultimately reached this court. The uniform negotiable instruments law definitely fixes the liability of the maker of a note. Comp. St. 1922, secs. 4671, 4729, 4730, 4801, *et seq.* That law was passed after the decision in *Merriam v. Miles, supra,* and so, in *Peter v. Finzer,* 116 Neb. 380, we held, since the statute made no provision for release of a maker of a note by an extension of time given by the payee to subsequent owners of land, Finzer was liable. Finzer paid the judgment. While Peter's suit against Finzer was pending, Finzer bestirred himself. He sued too. He brought in as parties defendant, in an action in equity, Peter and the subsequent grantees, recited the assumption agreement of the grantees and asked that the grantees be required to pay the debt to Peter and asked for other relief. Except for one amendment, which will be mentioned later in this opinion, this case remained stationary until Peter's suit was ended. Then Finzer again amended his petition alleging his new difficulty—that he was required to, and did, pay, and asked, together with equitable relief, for a judgment against the subsequent

grantees because each had assumed and agreed to pay the mortgage. The latter now also rely as a defense upon *Merriam v. Miles, supra.* Of these grantees only numbers one and two, respectively, Fred E. Bodie and J. L. Jobes, are involved in this appeal. They claim that the extension of time granted by Peter to numbers three and four, without their knowledge or consent, released them.

Under these conditions if we should now hold that extension of time of payment to last grantees would release all former grantees, as held in *Merriam v. Miles, supra,* it could be done only by entirely ignoring the obligation which each successive grantee assumed by contract with his grantor. The grantee agrees to pay the remainder of the purchase price to a third person to whom the grantor is either directly or by association indebted. Primarily the interest of the grantor in the contract with his grantee is to satisfy the obligation which he, the grantor, owes to his creditor. If, through some arrangement between the grantee and the creditor, the grantor is entirely relieved of the debt, it is obvious that the grantee's obligation to the grantor is satisfied. But, if the creditor's debt is not paid and the obligation of the grantor is not released, the grantee has never paid the remainder of the purchase price; he still owes it; he has not fulfilled his part of the contract.

Even though the assumption agreement confers rights on the mortgagee, the mortgagor still retains for himself such rights as the original indebtedness creates. That the benefit conferred upon the mortgagee by the assumption agreement does not result in a loss to the mortgagor of rights acquired by the contract creating the indebtedness is recognized in permitting the mortgagor to sue his grantee independently of any action by the mortgagee when the debt is due and unpaid. *Locke v. Homer,* 131 Mass. 93; *Morlan v. Loch,* 95 Kan. 716; *Callender v. Edmison,* 8 S. Dak. 81; *Gregory v. Hartley,* 6 Neb. 356; *Stichter v. Cox,* 52 Neb. 532. Particularly must the distinction between the rights of mortgagor and mortgagee under the conditions and the independence of such rights be recognized when both are permitted to file separate suits and subject

the grantee to two judgments for the same debt. *Gustafson v. Koehler,* 177 Minn. 115.

The object of the contract is satisfaction of the debt or payment. If, as in *Merriam v. Miles, supra,* the act of the mortgagee results in a release of both debtors, the mortgagor and grantee and all subsequent title holders, a satisfaction in law results. In that event the debt no longer exists; the cause for action has disappeared. But, how can it be said that the object of the contract has been attained by the act of a third person, the mortgagee, who accomplishes nothing to satisfy the debt?

Substantially what the defendants are contending is clarified in the following example: B owes A. A owes C. B agrees with A that B will pay A's debt to C. Because of some subsequent act of C, C cannot recover from B. However, C's act has not affected A's liability. C may still recover from A, but because of what C may have done A cannot recover what B still owes him. The fallacy in the reasoning is apparent. It lies in ignoring the contract creating the indebtedness between A and B and in overlooking that *A has done nothing* to estop him; that, if no element of estoppel is involved, the only way a debt can be satisfied is by payment.

From the foregoing it follows that the doctrine announced in *Merriam v. Miles, supra,* has no application to the facts in this case; that in an action by the mortgagor, who has been compelled to pay a debt which defendants assumed and agreed to pay, the defendants are liable on their assumption agreement; that no act of the mortgagee which does not result in a release of all parties can affect the contract between grantor and grantee.

As each grantee becomes in turn a grantor he also becomes a potential plaintiff without losing the role of a potential defendant. By a series of lawsuits beginning with the first and ending with the last grantor, the last grantee, the person who last owned the land, is compelled to pay. By compelling him to pay in the first instance, all the obligations of former grantees to their respective grantors are satisfied. Why pursue the circuit in lawsuits when

through equity a just result may be obtained in one suit, when other rights between the parties, if any exist, may all be determined and settled, for equity, having once taken charge, will do complete justice between the parties? But the defendant Jobes contends that the action as it stands is a lawsuit, nothing but a money demand, a prayer for a money judgment; that in law the liabilities are several and not joint, and that these defendants are improperly joined. However, the test of equity jurisdiction is not necessarily the prayer or that a money demand is made; the test is in the facts and what is to be accomplished. Equity prefers to do directly what can be done indirectly. Equity can best mete out justice in this very character of litigation and in which forum all the grantees can properly be joined.

In *Holland Reform School Society v. DeLazier*, 85 N. J. Eq. 497, 500, the court said: "That a court of equity is the only forum in which these various rights and obligations of the complainant and of the two defendants can be adjudicated upon in a single suit in such a way as to do complete justice to each of the parties is apparent. That it has jurisdiction to settle and enforce such rights and obligations, in order to avoid circuity of action, is undoubted. *Pruden v. Williams*, 26 N. J. Eq. 210, 212; *Biddle v. Pugh*, 59 N. J. Eq. 480, 490."

In that case, after foreclosure, A, the mortgagor, brought suit in equity for deficiency, which he had paid. His action was against his grantee, B, and a subsequent grantee, C, each of whom had, in turn, assumed and agreed to pay the mortgage. That A may in law sue B, and B in turn sue C, did not furnish such an adequate remedy as to exclude equity from granting in one action complete relief to all parties. The court held defendants B and C liable in inverse order of alienation.

Analogous to the instant case are suits by parties to nonnegotiable notes in which equity hastens the result by its ability to render in one suit complete justice between the parties.

"Although the assignee of a note not negotiable cannot sue a remote assignee at law, yet he may in equity. A court

of equity will give a remedy by making him immediately liable who is ultimately liable, on the principle that the court entertains jurisdiction to avoid multiplicity of suits; and in such case the original assignor may make the same defense against the remote that he could make against his immediate assignee." *Smith v. Harley*, 8 Mo. 559.

"If there were twenty successive indorsers of a note, this circuitous course (successive lawsuits) might be pursued, and by the time the ultimate indorser was reached, the value of the note would be expended in the pursuit. This circumstance alone would afford a strong reason for enabling the holder to bring all the indorsers into that court which could, in a single decree, put an end to litigation. No principle adverse to such a proceeding is perceived. Its analogy to the familiar case of a suit in chancery by a creditor against the legatees of his debtor is not very remote. If an executor shall have distributed the estate of his testator, the creditor has an action at law against him, and he has his remedy against the legatees. The creditor has no action at law against the legatees. Yet, it has never been understood that the creditor is compelled to resort to his legal remedy. He may bring the executor and legatees both before a court of chancery, which court will decree immediate payment from those who are ultimately bound. * * * The defendant sustains no injury, for he may defend himself in equity against the holder as effectually as he could defend himself against his immediate assignee in a suit at law." Chief Justice Marshall in *Riddle & Co. v. Mandeville & Jamesson*, 5 Cranch (U. S.) 322, 329.

As further illustrative of the principle that equity will make that party immediately liable who is ultimately liable at law, see *Dodd v. Wilson*, 4 Del. Ch. 399; *Rue v. Meirs*, 43 N. J. Eq. 377; *Chalmers, Jones & Co. v. M'Murdo*, 5 Munf. (Va.) 252, 7 Am. Dec. 684; *Howell v. Baker*, 151 Atl. (N. J. Eq.) 117, and particularly the syllabus written by the court in that case.

In effect, the district court held the defendants liable in inverse order of alienation and in doing so the court was clearly right. It is further apparent that the plaintiff

chose the proper tribunal; that the parties are properly joined, and that a prayer for a money judgment is not a jurisdictional factor under the conditions.

Lastly, the defendants contend that the cause of action stated in the final amended petition is so essentially different from that stated in the original petition that it constitutes a distinctly new cause of action; that, since more than four years time has elapsed between the filing of such amendment and the accrual of this new cause of action, it is barred by the statute of limitations; that the beginning of the suit tolls the statute only as to the causes stated in the original petition, and that the filing of an amendment which states new and different causes for recovery does not relate back to the filing of the original petition, but virtually becomes a new suit requiring new service. If these contentions of the defendants were correct, of course the plaintiff's action would be barred. However, without encountering the difficulties in thought and research which the other defenses have presented, we reach the conclusion that no new cause of action is stated in the final amended petition; that the amendment properly relates back to the beginning of suit, the filing of the first petition, and therefore the action is not barred.

Three petitions were filed by the plaintiff, the original and two amendments. The facts stated in these three pleadings were essentially alike, except that in the supplemental amended petition the fact that the plaintiff's liability had been fixed by the supreme court and that he had paid the amount to the mortgagee was recited. The prayers differed. In the first petition the plaintiff prayed for an order or judgment against Bodie, Jobes, Cayou and Rapp requiring and compelling them to pay to Peter and that defendants Bodie, Jobes, Cayou and Rapp indemnify the plaintiff against the payment or liability of payment of said debt and for equitable relief.

The first amended petition asked "that the court will adjudicate the whole matter and determine the question as to extensions, * * * and that a decree be entered decreeing that there has been such valid extension of time as releases

this plaintiff from all liability thereon, and decreeing which one or ones of the defendants, if any, shall pay said debt. * * * That * * * the defendant Fred E. Bodie be compelled by the court to exonerate this plaintiff and * * * be required to pay to the holders of said note and mortgage, for this plaintiff, the amount decreed to be due thereon," and for equitable relief.

The supplemental amended petition prays for judgment against Bodie, Jobes, Cayou and Rapp or one of them whom the court finds directly liable to petitioner for the sum of ———, and for equitable relief.

Had the plaintiff pursued his action under the first petition he would probably have been entitled to relief, for, as we have shown above, he would have been entitled to proceed regardless of any action by the mortgagee. The additional fact that plaintiff had been required to pay, except to strengthen the equities of the situation, did not change his cause of action. His own liability fixed his right of recovery.

Considering what apparently theretofore had been the settled law of this state, we appreciate the probable confusion of thought which led to the two amendments. However, the action proceeded as one in equity. The court entered a "decree" and treated the matter as an equity proceeding. Thus, regardless of what the prayer may have been, the court would do complete equity between the parties. In the first petition the defendants were apprised of what the plaintiff expected of them; that a judgment on the *debt* might be entered. In the amended petition his request is substantially the same—"which one or ones of the defendants, if any, shall pay said debt;" and in the supplemental petition he asks for a judgment against the grantees or the one directly liable. All prayers are accompanied by a request for equitable relief. It is true that the relief to which he thought himself entitled changed in form; but the essential idea of the liability of the defendants or some one of them remained.

"The prayer of a petition is merely the pleader's idea of the relief to which he is entitled; it is not a part of the

statement of the cause of action; and if the cause of action is sufficiently stated and sufficiently proved, the court will adjudge and decree the proper legal. redress, which may or may not conform in whole or in part to the relief prayed for by the pleader." *Eagan v. Murray,* 102 Kan. 193.

"The remedy sought is not the cause of action, and is no part of it. The cause of action, if valid, entitles the plaintiff to a remedy. In a proper case, he may change his claim for the remedy, without in any manner presenting a new cause of action. * * * The action after the amendment was simply a continuance of the original action, with a claim for a different remedy." *Case v. Blood,* 71 Ia. 632.

Changes in the form of an action and in the character or extent of relief sought, in which the facts upon which the action is based remain substantially the same, are generally held to be amendments, and not changes in the cause of action. For example: In *Friederichsen v. Renard,* 247 U. S. 207, a case arising in Nebraska, in which two Nebraska cases are mentioned as illustrative of the rule (*McKeighan v. Hopkins,* 19 Neb. 33, and *Butler v. Smith,* 84 Neb. 78, 28 L. R. A. n. s. 436), the court held a change in the prayer to be an amendment. The suit had been a suit in equity to cancel a contract for exchange of lands. Prayer changed to damages. Action at law on note changed to equitable action asking for subrogation. *Woodcock v. Bostic,* 128 N. Car. 243. Bill by mortgagee to quiet title amended after period of limitations asking for sale of mortgaged premises. *Easter v. Riley,* 79 Miss. 625. Action for damages amended to include equitable relief and to set aside conveyances. *Truman v. Lester,* 75 N. Y. Supp. 548. Amendment allowed setting up different measure of damages. *Scanlon v. Galveston, H. & S. A. R. Co.,* 86 S. W. (Tex. Civ. App.) 930; *Baker v. Gulf, C. & S. F. R. Co.,* 184 S. W. (Tex. Civ. App.) 257. For further examples see *Younglove v. Liebhardt,* 13 Neb. 557; *Shoemaker v. Commercial Union Assurance Co.,* 72 Neb. 650.

All the defenses have been ably and learnedly presented by counsel in briefs and argument, and merited and received most careful consideration. We reach the conclu-

sion, however, that justice has been well served in the conclusion reached by the district court, and its decree is in all respects

AFFIRMED.