## LORD MFG. CO. v. STIMSON et al.

### SAME v. HIRSCH et al. (two cases).
Civ. Nos. 23451, 31962, 36572.

District Court of the United States for the District of Columbia.

March 18, 1947.

John B. Brady and Patrick H. Loughran, both of Washington, D. C., and Ralph Hammar and Gifford, Graham, MacDonald, & Illig, all of Erie, Pa., for plaintiff.

John F. Sonnett, Asst. Atty. Gen., Robert Roy Dann, Sp. Asst. to the Atty. Gen., and Edward M. Curran, U.S. Atty., of Washington, D. C., for defendants.

Before PRETTYMAN, Associate Justice, United States Court of Appeals, District of Columbia, and BAILEY and MORRIS, Associate Justices, District Court of the United States for the District of Columbia, sitting as a statutory three-judge court.

PRETTYMAN, Associate Justice.

These are three renegotiation cases, one each for the years 1942, 1943 and 1944. The points involved in the first two relate to the existence or amounts of excessive profits. The Government proposes to recover its claim by offsetting the amounts against sums due by it to the plaintiff. Under these circumstances, the cases are controlled by the decisions of the Supreme Court in the Mine Safety and Waterman cases.[1] They must, therefore, be dismissed.[2]

The third case, No. 36572, relating to 1944, raises a different question. The Government, acting by the appropriate authorities in a unilateral proceeding, determined excessive profits of the plaintiff in the sum of about $7,000,000. The plaintiff filed a petition with the Tax Court of the

MORRIS, Associate Justice, dissenting in part.

[1] Mine Safety Appliances Co. v. Forrestal, 1945, 326 U.S. 371, 66 S.Ct. 219, 90 L.Ed. 140; Macauley v. Waterman S. S. Corp., 1946, 327 U.S. 540. 66 S. Ct. 712, 90 L.Ed. 839.

[2] We do not consider whether No. 23451 could be dismissed as having abated because the defendant Stimson has resigned from office and defendant Patterson has ceased to hold the office of Under Secretary of War. No motion either to abate or to substitute successors in office has been made.

United States for a redetermination. All questions relating to the existence and amount of the excessive profits are solely within the jurisdiction of that Court. No civil action relating to those questions will lie in the District Court.[3] The question before us does not relate to that determination but to the procedure of collection.

The plaintiff was a subcontractor. In its effort to recover the excessive profits, the Government has proceeded by issuing withholding orders. Section 403 (c) (2) of the Act[4] provides in part that the War Contracts Price Adjustment Board may authorize the Secretary to eliminate excessive profits "by directing a contractor to withhold for the account of the United States, from amounts otherwise due to a subcontractor, any amount of such excessive profits of such subcontractor; * * *" Acting under authority of that provision, the Secretary addressed withholding orders to 12 concerns which had, or had had, prime contracts with the Government, and which were also customers of the plaintiff. The plaintiff had, or had had, with each of these 12 concerns a subcontract relating to the matter covered by a prime contract between that concern and the Government.

The withholding orders thus issued directed the addressee to withhold for the account of the United States "any and all amounts otherwise due or which may become due from you to Lord Manufacturing Company, not in excess of $7,000,000." The features of these orders which are the premises of the present question are (1) that they are not limited to sums due to the plaintiff by the addressees upon subcontracts for Government work, but cover any sums due the plaintiff under any work, commercial as well as Government; and (2) that they are not limited to sums presently due but direct the withholding of all amounts due in the future until the full amount of $7,000,000 has been collected. The total amount due from the 12 concerns to the plaintiff at the time the withholding orders were issued was approximately $67,000, of which amount some $59,000 was due on civilian business. Up to the time of the submission of the case to the court, some $167,000 had been covered by the orders. Thus, the withholding orders, if valid, would remain in effect for an indefinite period and would transfer to the Government all amounts due the plaintiff by these concerns on civilian as well as Government business. While the plaintiff's regular customer list numbers over 2,000, the 12 to whom the withholding orders were addressed were the principal customers.

The plaintiff says that the section of the statute above quoted is limited to contractors with the United States and to amounts due subcontractors under contracts with the United States. It, therefore, says that the withholding orders are invalid, because they direct the withholding of amounts due plaintiff under non-Government contracts. The Government concedes that the statute limits the withholding orders to concerns which have, or have had, contracts with the United States, but it says that the orders may cover any amounts due upon any contracts, Government or non-Government, from such concerns to their renegotiated subcontractors.

■ It is clear, and not disputed, that the Tax Court of the United States has no jurisdiction to determine the validity or propriety of the withholding orders. Its jurisdiction covers the determination of the amount of the excessive profits.[5] The recovery by the Government of such excessive profits, and the provision of the statute relating to such recovery, are of no concern to the Tax Court. The statute does not designate the forum in which the validity or propriety of the collection procedure can be tested. Obviously, some forum must exist in which those matters can be determined. The Secretary's authority to recover excessive profits is entirely a statutory authority. The right to restrict him to the exercise of his statutory authority must exist somewhere.[6]

---

50 U.S.C.A.Appendix, § 1191(e) (1); Macauley v. Waterman S. S. Corp., 1946, 327 U.S. 540, 544, 66 S.Ct. 712, 90 L.Ed. 839.

Renegotiation Act, 50 U.S.C.A.Appendix, § 1191(c) (2).

50 U.S.C.A.Appendix, § 1191(e) (1).

Estep v. United States, 1946, 327 U. S. 114, 66 S.Ct. 423, 90 L.Ed. 567; Addison v. Holly Hill Fruit Products, Inc., 1944, 322 U.S. 607, 64 S.Ct. 1215, 88 L. Ed. 1488, 153 A.L.R. 1007.

The Government says that when these concerns to which the withholding orders were directed, withhold and pay over to the United States a sum otherwise due the plaintiff, the plaintiff can sue that concern in a common-law action for the amount due upon its subcontract. It says that in such a civil action the plaintiff could assert the invalidity of the withholding order upon which the withholding concern purported to act. It says that the Government would then intervene and thus bear the burden of establishing the validity of its withholding orders. To this contention the plaintiff replies (1) that the bringing of such suits against its customers would result in irreparable damage to it, because customers in a competitive market will not deal with concerns when such dealing will result in the expense, annoyance and publicity of law suits; and (2) that the procedure suggested by the Government would merely result in a multiplicity of suits with no possible advantage to any party over the simple procedure of a single suit possible under the equity power of injunction.

There is some merit to the plaintiff's first contention. Undoubtedly customers would dislike being the defendants in law suits in which they had no interest. Moreover, if they obeyed the withholding order and turned over to the Government amounts otherwise due the plaintiff, and the plaintiff recovered in the civil action, these concerns would be compelled to seek recovery from the Government, a complication which they probably would choose to avoid.

The plaintiff's second contention, however, appeals to us as being conclusive of the matter immediately before us. The addresses of the 12 concerns, as shown on the withholding orders, indicate that suits against the 12 would have to be brought in seven different district courts (eight different divisions), if they were filed, as presumably they would be, in federal courts. Otherwise, of course, they would be brought in different state courts, probably eight, in five different states.[7] Moreover, the plaintiff would have to protect itself from time to time against the expiration of the statute of limitations upon amounts due it from these concerns during the course of any litigation pursued as a test case to its final conclusion. Such a test case might conceivably last for several years. So that the plaintiff would probably be required to bring several civil actions against each of these concerns in order to protect its rights to recover, if it should eventually succeed in the principal litigation.[8]

We do not think that the United States is an indispensable party to a civil action involving only the statutory power of a named official to pursue a certain method of recovery of sums alleged to be due the United States. The question is solely the statutory power of a particular official to do a particular act. The money involved is not in the possession of the United States. The right of the United States to recover the money is not involved. The question is the exceedingly narrow one of the extent of the statutory power of the particular official, and the meaning of the statutory provision which confers power upon him.[9]

The Government answers the contention as to the multiplicity of suits by asserting that it would intervene in the civil actions brought by plaintiff against these 12 concerns, and would pursue one of the cases to a final conclusion and would deem itself thereafter bound by the decision in that particular litigation. We cannot give weight to the assertion thus made. In the first place, it is not made with such authority and with such concreteness as to form a premise for action of the court. Section 403 (c) (4) of the Act[10] gives the Secretary power to make binding agreements for the elimination of excessive profits and for the discharge of any liability for such profits. But no such agreement

---

[7] Three of the addressees are in Los Angeles County, California, two in Erie County, New York, and two in Nassau County, New York.

[8] Graves v. Texas Company, 1936, 298 U.S. 393, 56 S.Ct. 818, 80 L.Ed. 1236.

[9] Mine Safety Appliances Co. v. Forrestal, 1945, 326 U.S. 371, 373, 374, 66 S.Ct. 219, 90 L.Ed. 140.

[10] 50 U.S.C.A.Appendix, § 1191(c) (4).

is presented for our consideration. The assertion made to us is merely a declaration of present intentions on the part of the Secretary, made by his counsel in court. In the second place, a successor might deny the present Secretary's power to bind the Government irrevocably to such a course of action. If a successor in office should be of opinion that the agreed course of action was improper, it might very well be that he would attempt to pursue such course as he deemed proper. In the third place, it is common knowledge that the Government does not deem itself irrevocably bound by any one decision but, on the contrary, attempts repeatedly to re-litigate questions upon which it considers an erroneous answer has been reached by the courts. Examples of repeated re-litigations of disputed questions are easily found.[11] In the fourth place, the Supreme Court itself encourages the re-litigation of questions in the different circuits. It expressly recites in its Rules that one of the ordinary bases for a grant of certiorari is a conflict among the Circuit Courts of Appeals,[12] and the Government frequently re-litigates a question in a different circuit when it has once received an adverse decision in one circuit and failed to secure a writ of certiorari in the first case.[13]

That equity has jurisdiction to avoid a multiplicity of suits is an exceedingly practical doctrine. Necessity of litigating the same question between the same parties many times is such a waste, both on the part of the adversaries and on the part of the courts, as to constitute per se inadequacy of remedy.[14] It seems to us that the legal remedies available to the plaintiff, by way of a multiplicity of actions against different scattered customers, are speculative, inconvenient and inefficient. Plaintiff cannot, we believe, as adequately protect its rights in that piecemeal fashion as it can by a single proceeding in equity.

Whether, as an abstract proposition, multiplicity of suits will alone support equity jurisdiction is subject to some differences of opinion. But it is agreed that where the parties to all the possible actions are the same, and all the actions involve the same question of law or fact, equity has power to effect relief.[15] There is no material difference, so far as the doctrine is concerned, between a case where the parties are the same and one where the actual parties in interest are the same and only nominal parties, stakeholders, are different. The parties at interest here are the plaintiff and the Secretary. The various concerns which are the addressees of the withholding orders and which would be the nominal defendants in the other suggested actions, are bystanders with no real interest. Plaintiff's remedy at law lies in suing one by one these 12 concerns. Such a defendant, being a completely impartial and disinterested stakeholder, could by way of a bill of interpleader in a federal court of equity of proper jurisdiction bring these two real parties at interest together in one suit.[16] Plaintiff could accomplish the same end by bringing suit in equity against the Secretary directly, even though it might be necessary to name the customer as a co-defendant. Equity

11 E. g., Helvering v. Butterworth, 1933, 290 U.S. 365, 54 S.Ct. 221, 78 L. Ed. 365 (reviewing three cases from the Third Circuit Court of Appeals and one case from the Fifth Circuit Court of Appeals; and disapproving one earlier decision from each of the First, Second and Eighth Circuit Courts of Appeals. All of these cases involved identical issues of income tax law.)

12 Rule 38, subd. 5(b), Rules of the Supreme Court of the United States, 28 U.S.C.A. following section 354.

13 See note 11, supra.

14 Graves v. Texas Company, 1936, 298 U.S. 393, 403, 56 S.Ct. 818, 80 L. Ed. 1236; Risty v. Chicago, R. I. & Pac. Ry. Co., 1926, 270 U.S. 378, 388, 46 S. Ct. 236, 70 L.Ed. 641; Weeks v. Bareco Oil Co., 7 Cir., 1941, 125 F.2d 84, 94; Pomeroy, Equity Jurisprudence (4th Ed. 1918) § 243; Chafee, Bills of Peace with Multiple Parties (1932) 45 Harv.L.Rev. 1297, 1317, 1319.

15 Pomeroy, op. cit. supra note 14, § 267; Graves v. Texas Company, supra note 14.

16 28 U.S.C.A. § 41(26) (e); Treinies v. Sunshine Mining Co., 1939, 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85, rehearing denied, 1940, 309 U.S. 693, 60 S.Ct. 464, 84 L.Ed. 1034; Dugas v. American Surety Co., 1937, 300 U.S. 414, 423, 57 S.Ct. 515, 81 L.Ed. 720, rehearing denied, 1937, 301 U.S. 712, 57 S.Ct. 787, 81 L.Ed. 1365.

abhors circuity of action and will make that party immediately liable who is ultimately liable at law.[17]

Some authority is found for the proposition that one of the requisites of such a bill of peace is that plaintiff first establish his legal right in an action at law. Examination of the cases cited, however, shows either that the relief sought was the quieting of title to real estate[18] or the enjoining of the collection of an allegedly illegal tax[19] (both of which instances demand particular caution on the part of an equity court), or that the statement relied upon was pure dictum.[20]

It is true that a mere theoretical inadequacy of the legal remedy due to multiplicity of suits may find an equity court refusing to exercise its power. Each case must be decided upon its own merits and the convenience to plaintiff must not be offset by substantial inconvenience to the other parties.[21] So far as the present proceeding is concerned, there is no disadvantage to any party of interest, or to the courts, in litigating the controversy to a conclusion in one proceeding instead of initiating many proceedings for the same purpose. As a matter of fact, it would probably be to the greater convenience of the Secretary if the controversy were resolved in the present proceeding. Not only would he be required to appear but once, but the place of the proceeding is at the location of his headquarters where his staff has its offices. The present court is in practical effect the same as the courts which would probably entertain the other type of law suit. All are federal courts. If there was any advantage or disadvantage in the old separation between the equity court and the court of law, it has been wiped out by the elimination of the difference in the federal system. All rights involved can be protected as well in this present suit as in the many separate actions. Every practical consideration supports the disposition of the controversy in a single proceeding rather than in a multiplicity of suits.

It is also said that plaintiff can prevent any irreparable damage and likewise prevent a multiplicity of suits by paying the amount of the Government's claim and bringing suit to recover. By so doing, plaintiff would eliminate any rights which it may have to test the validity of the collection process which the Secretary is now pursuing by these withholding orders. Plaintiff would be required to concede, in effect, the very question which it raises. We do not think that he can be compelled to forego his contest, or that the legal remedy which would ensue to him can be termed adequate. It would not preserve to him the right which he asserts, even if that right be valid.

For all the foregoing reasons, we are of opinion that this court has jurisdiction of this proceeding (No. 36572) to the extent that it relates to the validity of the withholding orders already issued and to be issued by the Secretary under the asserted authority of Section 403 (c) (2) of the Act. The motion to dismiss the action for lack of jurisdiction is, therefore, denied.

Counsel will prepare and present appropriate orders in accordance with this memorandum. They will also indicate to the court an early date, convenient to those

[17] Riddle & Co. v. Mandeville and Jamesson, 1810, 5 Cranch. 322, 3 L.Ed. 114; Natural Gas Pipeline Co. v. Federal Power Commission, 7 Cir., 1942, 128 F.2d 481; Finzer v. Peter, 1930, 120 Neb. 389, 232 N.W. 762, 73 A.L.R. 1170; Wyche v. Bank of Campbell County, 1925, 160 Ga. 258, 127 S.E. 741.

[18] Boston & Montana Consol. Copper & Silver Min. Co. v. Montana Ore Purchasing Co., 1903, 188 U.S. 632, 641, 23 S.Ct. 434, 47 L.Ed. 626; Wehrman v. Conklin, 1894, 155 U.S. 314, 15 S.Ct. 129, 39 L.Ed. 167; Holland v. Challen, 1884, 110 U.S. 15, 3 S.Ct. 495, 28 L.Ed. 52.

[19] Pomeroy, op. cit. supra note 14, § 253.

[20] United States v. Dorough, 5 Cir., 1937, 88 F.2d 306; New York Life Ins. Co. v. Marshall, 5 Cir., 1928, 23 F.2d 225.

[21] Di Giovanni v. Camden Fire Ins. Ass'n, 1935, 296 U.S. 64, 70, 56 S.Ct. 1, 80 L.Ed. 47; Matthews v. Rodgers, 1932, 284 U.S. 521, 529, 52 S.Ct. 217, 76 L.Ed. 447; Yellow Cab Transit Co. v. Overcash, 8 Cir., 1942, 133 F.2d 228, 231.

necessarily involved, at which further and final presentation of evidence and argument in Civil Action No. 36572 may be made upon the issue to which that proceeding is now limited.

Mr. Justice Morris is of opinion that the motion to dismiss in No. 36572 should be granted, and has stated his views upon that question in a separate memorandum filed simultaneously herewith.

MORRIS, Associate Justice (dissenting).

I agree that cases Nos. 23451 and 31962 should be dismissed for the reasons stated in the Court's opinion.

I cannot agree that the motion to dismiss case No. 36572 should be denied. I am of the view that the proper remedy of the plaintiff to test the validity of the withholding orders is in an action by the plaintiff against one or more of its customers who are withholding monies by virtue of such withholding orders, and in which suit such defense is raised. This is the procedure sanctioned in Coffman v. Breeze Corporations, 323 U.S. 316, 65 S.Ct. 298, 89 L.Ed. 264.

The sole basis stated in the Court's opinion for assuming jurisdiction to determine the validity of the withholding orders is to avoid a multiplicity of suits. I do not doubt that, where a clear case for equitable relief is presented, the mere fact that there is no precedent should not prevent the exercise of the powers of a court of equity. Where, however, there is no recognized equitable jurisdiction in a suit by one party against governmental officers simply to prevent a multiplicity of suits against private parties, I do not believe that there should be an extension to new fields where no hardship will be suffered by the plaintiff in denying jurisdiction on that ground. Here it has been shown that payments of the amount claimed by the Government could be made without any hardship upon the plaintiff. I am clearly of the view that plaintiff cannot be lawfully deprived of the right, after exhausting all administrative remedies, either to challenge in a constitutional court of review the validity of the law requiring payments under the Renegotiation Act, 50

U.S.C.A.Appendix, § 1191, or, in the absence of such right of review, to recover by suit against the United States in the Court of Claims any such payments unlawfully required to be paid. For these reasons, I must respectfully dissent from the majority ruling to take jurisdiction in the instant case.